(No. 12371.—Reversed and remanded.)
THE CENTRAL GARAGE OF LASALLE, Plaintiff in Error, vs.
THE INDUSTRIAL COMMISSION et al.—(BENJAMIN T.
DRESBACH, Admr., Defendant in Error.)

*Opinion filed December 18, 1918—Rehearing denied Feb. 6, 1919.*

1. WORKMEN'S COMPENSATION—*when injury does not arise out of employment.* An injury to an employee while engaged in a voluntary act not accepted by or known to his employer and outside of the duties for which he was employed does not arise out of his employment.

2. SAME—*when compensation cannot be awarded for death of garage employee.* Where a garage employee, after taking a passenger by automobile to the destination directed by his employer, suggests to the passenger that they continue their drive while waiting for the train, and after riding some distance further is killed by the passenger, who had suddenly become insane, the death of the employee does not arise out of and in the course of the employment and compensation cannot be awarded.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

RUSSELL B. JAMES, and McDOUGALL, CHAPMAN & BAYNE, for plaintiff in error.

BROWNE & WILEY, and BUTTERS & CLARK, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was sued out to bring up for review a judgment of the circuit court of LaSalle county affirming an award made by the Industrial Commission under the Workmen's Compensation act in favor of defendant in error.

Joseph Derix was a chauffeur in the employ of the Central Garage of LaSalle. The night of July 17, 1916, he was sent by his employer to drive a car and carry a passenger named Bernard Sherman from LaSalle to Ladd, Illi-

nois. The next morning his dead body was found by the roadside between a mile and one-half and two miles beyond Ladd and not on the road leading from LaSalle to Ladd. He had been shot by the passenger. His administrator presented a claim for compensation to the Industrial Commission and a hearing was had before an arbitrator. It was agreed both parties were subject to the Compensation act. The arbitrator denied the claim for an award and a review was had before the Industrial Commission, which allowed the claim for compensation and fixed the award at $32.50 per month for a period of 96 months, commencing from the date of the death. The action of the board was reviewed by the circuit court on *certiorari* and the award affirmed. The presiding judge made a certificate that the case was a proper one for review by this court, and the record is brought here for review by writ of error.

It is contended by plaintiff in error that the Industrial Commission had no jurisdiction to review the finding of the arbitrator because no petition for that purpose was filed within the time required by law, and also that no award was authorized in any event because the accident did not arise out of and in the course of the employment of the deceased.

The only explanation given of the death of Derix and why his body came to be at the place it was found is the testimony of Bernard Sherman. In 1914 Sherman was confined in the insane asylum at Elgin, from which he escaped after having been there about two months. He was not apprehended and re-committed and appears to have been working at or near Woodstock just prior to the time he hired the car to go to Ladd. There can be no doubt he shot and killed Derix. He claims his mind had suddenly become blank and he remembered very little about it. He was indicted for the murder of Derix and in November following was tried as to his sanity, found insane and sent to the asylum for insane criminals at Chester. It is not

questioned that Derix left LaSalle with Sherman for Ladd at about 11 or 11:30 o'clock at night. As we understand it, the distance is about fifteen miles. Sherman had called at the garage earlier in the evening and talked with the manager about hiring a car and driver to go to Spring Valley. At that time he inquired about what railroads passed through Spring Valley. About eleven o'clock he called the garage by telephone and asked for a car to go to Ladd. He was then at the Rock Island depot in LaSalle. Derix was given an Overland car and sent to get Sherman and take him to Ladd. Sherman testified that the reason he changed his destination from Spring Valley to Ladd was that he wanted to get a train on the Milwaukee railroad and had learned such railroad did not pass through the former place but did pass through Ladd. He learned the train he wished to get would arrive at Ladd at about 1:30 o'clock in the morning. Between the time he had spoken to the garage man about the car and the time he started on his trip to Ladd he had visited saloons in LaSalle and had taken some drinks. When he started on the trip he testified he had a pint bottle and a half-pint bottle of whisky. On the way they passed through Spring Valley and stopped at one or more saloons, where Sherman had some drinks, but it is not clear, and it is denied, that Derix drank there. Sherman testified that by the time they arrived at Ladd he and Derix had consumed the two bottles of whisky, except about one-fourth of a pint. When they arrived at Ladd and when in the vicinity of the depot Sherman started to prepare his suitcases to take out of the car and go to the depot. It was then in the neighborhood of 12:30 o'clock. Derix inquired of him what time his train would arrive, and he replied at 1:30 o'clock. Derix said they had an hour or more yet and proposed that they continue their drive. He said he could tell his boss he had tire trouble. Sherman agreed, and they drove out of Ladd north and east something like two miles. Sherman testified he remembered seeing some

gravel in the road and that his mind then went blank. He also had some recollection or impression of an argument that he had with Derix and that he used his revolver after leaving Ladd and before arriving at Clinton, Iowa. He testified he was partially drunk and that both of them were "pretty well under the weather." There was no proof that Derix was in the car when he was shot, but the fact that there was no blood in or on the car or other indication that he was shot while in the car makes it at least doubtful that he was shot in the car.

Having reached the conclusion that the award was unauthorized on the merits of the case it is unnecessary to pass upon the preliminary question that the petition for a review by the Industrial Commission was not filed within the time required by law.

We have endeavored to set out the substance of the material facts upon which it must be determined whether the accident arose out of and in the course of the employment of Derix.

In *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, the accident occurred during the employment but while the employee was doing something he was not employed to do. The court quoted the rule announced in *Moore* v. *Manchester Liners,* A. C. 498, that an accident to an employee occurs in the course of the employment when it takes place "while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing," and said: "It is the rule that an employee is engaged in the course of his employment when the injury occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it." A number of cases are cited and reviewed in the opinion sustaining the rule announced. The rule announced in that case was expressly approved and adhered to

in *International Harvester Co.* v. *Industrial Board,* 282 Ill. 489, and *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148. Discussing the question when compensation may be awarded on the ground that an injury to an employee arose out of and in the course of the employment, the Supreme Court of Massachusetts said in *In re McNichol,* 215 Mass. 497; "In order that there may be recovery the injury must both arise out of and also be received in the course of the employment. Neither, alone, is enough. * * * It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work is required to be performed and the resulting injury." The adjudicated cases, American and English, so far as we are informed, universally hold that an injury to an employee while engaged in a voluntary act not accepted by or known to the employer and outside the duties for which he is employed cannot be said to arise out of his employment. *Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96, and *Alexander* v. *Industrial Board,* 281 id. 201, are clearly distinguishable from the decisions above cited and not in conflict with the rule there announced.

Defendant in error contends Sherman killed Derix in order to obtain possession of the car, and from this premise argues that the death arose out of the employment. There was no proof to support that position except the inference from the fact that Sherman drove the car to Clinton, Iowa, after the killing and offered to sell it for $300. Sherman testified he did not intend to steal the car; that he hired it to drive to Ladd, where he intended taking a train on the Milwaukee railroad at 1:30 o'clock. After reaching Ladd and while on a pleasure ride, which, so far as any proof in the record shows, was taken at the suggestion of Derix and

was outside the duties of his employment, Sherman claims his mind became a blank and he had nothing but a confused memory of what occurred from that time until the next day, when he found himself in possession of the car, which he drove to Clinton, where he tried to sell it. Derix's employment only authorized and required him to deliver Sherman at the depot in Ladd. There is no suspicion from anything in the record that before the arrival at Ladd there was any thought or purpose on the part of Sherman to harm Derix or get possession of the car, and the inference is clearly warranted that if Derix had delivered Sherman at the depot in Ladd, which was what he was employed to do, he would not have been harmed. The pleasure drive from Ladd, according to the proof, was not taken at the suggestion of Sherman but was proposed by Derix, and was not only outside of his employment but was known by him to be contrary thereto, as shown by the excuse he proposed to make to his employer for his late return to LaSalle. The burden of proof rested upon defendant in error to show that the injury arose out of and in the course of the employment. (*Ohio Building Vault Co.* v. *Industrial Board, supra.*) It is true Sherman cannot be considered a very reliable witness, because at times, at least, he appears to have been crazy, but his testimony that after arriving at Ladd the parties went for a drive, which formed no part of the employment of Derix, is corroborated by the circumstance of finding the dead body of Derix at the place it was found the next day. There is no proof in the record from which it can be legitimately inferred that Derix was killed by Sherman while he was performing any duty of his employment.

The judgment is reversed and the cause remanded, with directions to the circuit court to set aside the award of the Industrial Commission.

*Reversed and remanded, with directions.*