The St. Louis and O'Fallon Coal Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Anna Martin *et al.* Defendants in Error.)

*Opinion filed April 20, 1927—Rehearing denied June 9, 1927.*

1. Workmen's compensation—*burden is on claimants to prove injury arose out of and in course of employment.* The burden is on dependents claiming compensation for injury resulting in death to prove the injury arose out of and in course of the employment.

2. Same—*when risk of injury is not incident to employment.* Where an employee in going to his work chooses a route more dangerous than that afforded to the public or furnished him by his employer, or places himself in a dangerous place where his employment does not necessarily carry him, and where he incurs a danger of his own choosing outside of the reasonable requirement of his employment, the risk arising from such acts cannot be said to be incident to the employment.

3. Same—*when injury to miner walking on railway track does not arise out of and in course of employment.* The death of a coal miner who was struck by a train while walking down a railway track from the mine office to the tipple of the mine does not arise out of and in the course of his employment where the employer afforded employees a better and more safe way of going from the

office to the tipple of the mine and where the railway belonged to another corporation and was not on the employer's premises, notwithstanding the facts that the railway company was engaged in hauling coal from the mine and hauled mine employees to their work free of charge.

Writ of Error to the Circuit Court of St. Clair county; the Hon. Louis Bernreuter, Judge, presiding.

Farmer & Klingel, for plaintiff in error.

W. J. MacDonald, (A. W. Kerr, of counsel,) for defendants in error.

Mr. Chief Justice Stone delivered the opinion of the court:

This cause comes on writ of error to the circuit court of St. Clair county to review the judgment of that court confirming the award of the Industrial Commission to the defendants in error for the death of John Martin. Martin was struck and killed by a train of the St. Louis and O'Fallon Railway Company while walking along the tracks of the railway company on his way from the office to the mine tipple of plaintiff in error. The only question raised is whether the accident from which Martin died arose out of and in the course of his employment.

It appears that through an arrangement between plaintiff in error and the St. Louis and O'Fallon Railway Company a train consisting of six passenger cars was run each morning from East St. Louis to the mine, carrying about 400 employees who were engaged there. After the employees alighted the cars were shoved onto a side-track until evening and the engine was used to make up trains of coal cars and to collect such other freight as accumulated at and in the neighborhood of the mine. The transportation of plaintiff in error's employees was free to them. This railway extends east and west along the south side of plaintiff in error's property. It is owned by a different organiza-

tion, in which plaintiff in error is not shown to be interested though the names are similar. The office and tipple of plaintiff in error's mine, known as mine No. 2, adjoin the various tracks and switch-tracks of the railway company on the north side thereof. The tipple of the mine is located about three hundred feet east of the office. Connecting the two is a road on the southern portion of plaintiff in error's property, twelve feet in width and surfaced with cinders. It lies a few feet north of these tracks. The evidence as to the distance north of the tracks varies from four feet to twelve feet. A small drainage ditch extends between the road and right of way of the railway. For the first fifty yards or more east from the office the road and the right of way of the railway are of approximately the same elevation. For the balance of the distance to the tipple the elevation of the road rises, and a concrete retaining wall, beginning where the elevations of the road and right of way begin to vary, has been built between the property of the railway company and that of plaintiff in error and extends to the tipple. At the last named point the wall is approximately fifteen feet in height. Stairs connect the surface of the road at the tipple with the surface of the right of way of the railway. The evidence shows this stairway is used by certain employees to go from the property of plaintiff in error onto the right of way for the purpose of moving cars from under the shakers of plaintiff in error's mine by means of crow-bars. The greater weight of the evidence shows that it was not the custom of the employees to go from the office to the tipple of the mine by way of the right of way of the railway and stairway but that it was their custom to follow the cinder road on plaintiff in error's property. Martin on the morning of his death had stopped at the office and received his pay check and statement. He started toward the tipple to go to work. He walked east on the north track of the right of way, reading the statement that had been given him at the office.

He had thus proceeded on the railway track twenty-five or thirty feet when he was struck by a caboose, which with some coal cars was being pushed along the track. He apparently did not see the cars coming. So far as shown by the record no instructions were given to plaintiff in error's employees concerning the way to be used in going from the office to the tipple of the mine. The evidence is, and it would seem clear without the aid of evidence on the subject, that when the tracks of the railway company were in use it was dangerous to proceed thereon from the office to the tipple of the mine.

It is argued by counsel for defendants in error, however, that the railway track in this case was, in fact, one of the instrumentalities of plaintiff in error's mine and so connected with the premises as to be, in effect, a part thereof. The evidence, however, does not support this contention. So far as shown by the evidence the railway company is an independent concern devoted to railway business, and neither the fact that it has switch-tracks running by the tipple of the mine on which it hauls away the coal from the mine, nor the fact that it conveys plaintiff in error's employees to the place of their employment without charge to them, constitutes evidence that the railway itself is an instrumentality of the mine. Martin was struck by the caboose of a short train that had been picked up by the engine which had drawn the passenger train to the mine, but there is no evidence that this train or right of way constituted part of the property or premises of plaintiff in error. The burden of showing that the injury in this case arose out of and in the course of the employment of the deceased rested upon defendants in error. ·(*Central Garage* v. *Industrial Com.* 286 Ill. 291.) It has long been the established rule in this State that where an employee in going to his work chooses a route more dangerous than that afforded to the public or by his employer, or places himself in a dangerous place where his employment does

325—37

not necessarily carry him, and where he incurs a danger of his own choosing outside of the reasonable requirement of his employment, the risk arising from such act cannot be said to be incident to his employment. (*Terminal Railroad Ass'n* v. *Industrial Com.* 309 Ill. 203; *United Disposal Co.* v. *Industrial Com.* 291 id. 480; *Nelson Construction Co.* v. *Industrial Com.* 286 id. 632.) We are of the opinion, therefore, that the risks of walking on the railway track were of Martin's own choosing and that the injury did not arise out of and in the course of his employment. The judgment of the circuit court affirming the award was therefore erroneous.

The judgment is reversed and the award set aside.

*Judgment reversed and award set aside.*