WILLETTE'S CASE.

Kennebec.      Opinion, October 15, 1937.

*F. Harold Dubord*, for employee.
*Perkins & Weeks*, for employer.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Barnes, J.   This is a proceeding under the Workmen's Compensation Act to recover compensation for wages lost by reason of an accident to petitioner, an employee of defendant company, which occurred on June 8, 1933, in the woodroom of its pulp or paper mill.

Petitioner had worked for this employer for about thirty years, and when injured was employed as the woodroom cleaner or sweeper.

He suffered a trifling wound of the left arm, in law the direct cause of a grievous illness, when he tilted a truck, bearing a heavy, circular, wood saw, the saw rolling toward the rear of the truck, past the point where a pin, had it been securely in place, should have stopped the rolling, petitioner interposing his arm to stop the saw.

The commissioner decreed, and the court below affirmed an order awarding compensation.

Employer brings this appeal with principal defense that the injury complained of did not arise out of and in the course of petitioner's employment.

Before our compensation law was enacted, for the Court of Massachusetts, Chief Justice Rugg, in an opinion followed in many jurisdictions, expressed what we hold to be the solution of a perplexing question in a case such as this. He wrote,

> "The first question is whether the deceased received an 'injury arising out of and in the course of his employment,' within the meaning of those words in part 2, Sec.1, of the act. In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough."

> "It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act, and with precision exclude those outside its terms. It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty

which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been forseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Re McNicol et al.*, 215 Mass., 497, 102 N. E., 697, L. R. A., 1916 A., 306.

Our Court, in numerous decisions, has acted upon like reasoning, among the decisions are: *Westman's Case*, 118 Me., 133, 106 A., 532; *Saucier's Case*, 122 Me., 325, 119 A., 860; *Taylor's Case*, 126 Me., 450, 139 A., 478; *Gooch's Case*, 128 Me., 86, 145 A., 737; *Sullivan's Case*, 128 Me., 353, 147 A., 431.

The commissioner found, as matter of fact, that petitioner's "work was, a cleaner in the woodroom." The record shows, beyond question, that he contracted and was employed to perform no other duties than that of a cleaner, or sweeper; that it was not his duty to approach, manipulate, or have anything to do with saws or the apparatus in which they were moved from room to room in the mill.

If the report makes it apparent to the rational mind that petitioner was engaged in activities beyond the scope of his employment when he received the accidental injury, no consideration of emergency being involved, it is error of law upon the part of the com-

missioner to hold his employer subject to pay compensation for injury suffered by petitioner when so engaged.

Let us look at the facts developed in the hearings before the commissioner.

In the room beyond the woodroom, on one side, pulp wood was cut into required lengths by circular saws.

On the other side was the filer's room, where saws were sharpened.

It was the filer's duty, and no part of the work of the petitioner, to remove a saw from the room where it had been in use to the filing room and to return it to the sawyer, on each trip passing, with the saw, through the woodroom.

A truck was furnished the filer, to convey the saws through the woodroom.

The accident occurred just before twelve o'clock, when operation of this part of the mill would be suspended, for lunch.

The filer came into the woodroom with a saw on a new truck, and left the truck standing in the room.

The truck had two wheels, to carry the load, and another wheel at its front.

The handles by which it was propelled were at the rear of the truck, and the saw, in this case about three and a half feet in diameter, when rolled onto the truck could be secured by a pin through the rear of the frame.

It was the duty of the filer to load the truck and to adjust a wooden pin at the rear of the saw so that it might not roll out rearward.

So standing on the floor the truck was approached by the petitioner, who testified it was no part of his work to handle the saws, and that the truck was not in his way. He testified that he spoke to the filer, before the latter stopped the truck, and said to him that there were no nuts on the bolts that held the forward wheel, and that the filer replied, "All right. We will put some on this afternoon."

He testified that he moved the truck a little, "moved it to see how it went." "I wanted to show him in pushing it like that that it might fall to pieces."

He said, "The pin was out. The saw came towards me. I put my

(left) arm there to hold it," and his arm was punctured or lacerated by the saw.

Through the portal thus opened infection entered.

Such in fact is the history of this case.

The issues are but two as stated with entire frankness by counsel for the petitioner:

First, did he, while in the employ of the company, suffer an accident?

Second, did the accident arise out of and in the course of his employment?

The accidental prick of the saw, had it been received in the course of Willette's employment, would have justified the commissioner in awarding compensation.

But it does not appear that the accident arose while claimant was operating in the course of his employment.

If so, the commissioner made error of law in awarding compensation.

Claimant urges that he acted under impulse raised by emergency which threatened loss to his employer, or injury to a fellow employee.

We find no emergency existent.

If the absence of nuts from bolts in the forward end of the truck contributed to the happening of the accident, the record shows that the loaded truck entered the woodroom propelled by and literally in the hands of the only employee intrusted with the moving of saws from room to room; that when notified by claimant of a defect in the truck, the saw filer replied, "All right, we'll put some on this afternoon."

Nothing within the course of petitioner's employment required his further interest in the condition of the truck. Whatever the cause prompting him to demonstrate the possible result of moving the truck, when he "pushed it a little," he was an interferer, a mere volunteer, acting outside the scope of his employment, and engaged in activity not in any sense incidental to his employment.

A few of the decided cases in other states holding to this effect are: *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich., 125, 153 N. W., 657; *Central Garage* v. *Industrial Com.*, 286 Ill., 291, 121

N. E., 587; *Great A. & P. Tea Co.* v. *Ind. Commission*, 347 Ill., 596, 180 N. E., 460, 83 A. L. R., 1208; *Eugene Dietzen Co.* v. *Ind. Board*, 279 Ill., 11, 116 N. E., 684; *Michael* v. *Henry et al.*, 209 Pa., 213, 58 A., 125; *Mann* v. *Glastonbury Knitting Co.*, 90 Conn., 116, 96 A., 368; *Utah Copper Co.* v. *Ind. Com.*, 62 Utah, 33, 217 P., 1105; *Re John Borin* v. *Am. Mut. Liability Ins. Co.*, 227 Mass., 452, 116 N. E., 817, L. R. A., 1918 A., 217; *Stagg* v. *Western Tea & Spice Co.*, 169 Mo., 489, 69 S. W., 391, where a floor cleaner left his work, began to operate a bolting saw and was injured; *Bullard* v. *Cullman Heading Co.*, 220 Ala., 143, 124 So., 200, distinguishing *Ex parte Majestic Coal Co.*, cited by complainant.

We have carefully considered the cases cited by petitioner's counsel, but in each of them have found that the work upon which the employee was engaged at the time of the accident was by him entered upon in an emergency, to prevent injury to persons from employer's machines, such as to facilitate the employer's business and the performance of his own work, or was clearly incidental thereto.

Perhaps the Maine case most nearly like this at bar is *Sullivan's Case*, 128 Me., 353, 147 A., 431. This opinion and our decisions cited therein give our view of the law under the circumstances of those cases, and it is against recovery.

Always should be borne in mind the position of this Court, announced in *White* v. *Eastern Manufacturing Co. et al.*, 120 Me., 62, 69, 112 A., 841: "The employer has rights as well as the employed. Their rights stand upon an equality in the eye of the law. Perversion of the law, either to benefit the employee or protect the employer, has the tendency only to bring the law into contempt."

*Appeal sustained.*
*Affirmatory decree reversed.*