236

(No. 3099—)

EDITH CREWS, HOWARD CREWS AND WAYNE CREWS, Claimants, *vs.*
STATE OF ILLINOIS, Respondent.

*Opinion filed April 11, 1940.*

PARKER, BAUER & PARKER, for claimants.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE,
Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The petitioners are the wife and heirs at law of the
decedent.

The complaint consists of two counts. The first count
alleges that the deceased was driving his automobile in a
southerly direction on Schyler Avenue in the City of Kanka-
kee, Illinois, at the rate of ten miles per hour; that he was an
employee of the State, being an attendant at the State In-
stitution for the Insane at Kankakee; that he desired to turn
west at the intersection of Schyler Avenue and River Street;
that there is located there a strip of land, immediately south
of River Street, belonging to the park district of the City of
Kankakee, which strip of ground borders on the North side
of the Kankakee River; that he was in the exercise of due
care and caution for his own safety and the safety of his
automobile; that while in the exercise of due care and caution
for himself and property at about 5:30 in the morning of
January 8, 1937, the weather being misty, foggy and the
visibility very bad, and he being an experienced driver, for
the lack of proper guards and barricades, he drove off the
highway for some seventy or seventy-five feet into the river
and was drowned. This count charges that it was then and
there the duty of the State to erect sufficient barricades to
prevent one from driving into the river. It might be said that
this count attempts to charge negligence under the common
law.

The decedent's work had to do with milking at the Kankakee State Hospital, and he supervised others doing that kind of work. He had been working there since 1934, and it appears that on the morning in question, he had taken a grandchild and daughter-in-law to catch an early conveyance. These relatives had been visiting the decedent's family at Kankakee and were about to return home, and they had stopped for an early morning breakfast. The evidence shows that he was on a regular, approved, customary route from the restaurant to the State Institution or the place where he was employed, and it is contended that he had a right to go around about way if he so desired "as long as he was on his way to work." The evidence does not disclose that this particular part of the road over which decedent rode was under a state of repairs, or was in any way other or different than it had been for sometime, and was not in a good state of repair.

It appears from the record that on the morning in question a very dense fog prevailed along this particular highway which was probably due to its close proximity to the river. One witness, a driver of a delivery truck, had met the deceased at the restaurant and discussed with deceased the matter of the heavy fog and this driver of a delivery truck stated that it was almost impossible to see; that in a short distance he had been required to stop several times so that he might ascertain if his vehicle was on the street, and that he had been unable to drive it at a greater speed than five miles per hour.

There were no eye witnesses and consequently no evidence as to the rate of speed, but as we regard this question, the rate of speed is not a controlling factor.

It has been thorough established that the doctrine of respondeat superior does not apply to this State and the State is not liable for injuries to the person or damages to property caused by the negligence or wrongful acts of its officers, agents or employees.

In the case of *Minear* vs. *State Board of Agriculture,* 259 Illinois, 549, our Supreme Court held that the State Board of Agriculture is not liable in an action for damages for an injury received by the collapsing of the elevated seats or bleachers provided for spectators of the races at the State Fair, even though the board may have been guilty of negligence in not discovering the defective condition of said seats

or bleachers. In this case the negligent act charged is the failure of the State to erect suitable barricades to prevent one from driving into the river from Schyler Avenue. We know of no statute requiring any officer of the State to erect such barricades, and, of course, there is nothing under the common law creating a duty on behalf of the sovereign power to erect barricades, and the deceased never had the right, under the common law, to sue the State. In the *Minear* case above referred to, our Supreme Court, discussed a similar question, quite thoroughly, and much of the reasoning applied in that case, would apply with equal force to the case at bar.

In a much more recent case, that of *Gebhardt* vs. *Village of LaGrange Park*, 354 Ill. 235, decided in 1933, our Supreme Court held that the principle upon which freedom from liability for damages occasioned by servants of a municipality in performing governmental functions is based rests on the fact that the duty of the municipality is owed to the public, and though the neglect causing the injury may prove of damage to the individual affected, the benefits of the discharge of the duty to the public generally is deemed an outweighing consideration and so justifies immunity to the municipality. In this same case the court said that in determining the application of the rule of respondeat superior, the question whether a municipality, at the time in question, was performing a governmental function or was engaged in a proprietary enterprise is to be determined not only by the question whether or not the function was voluntarily assumed but also from the nature and effect of the duty discharged or the act done, and if the duty involves a general public benefit as distinguished from the interest of the municipality in a corporate or business undertaking, the function is governmental whether the duty is directly imposed or voluntarily assumed.

In view of these authorities and others and the many decisions of this court, we must hold that the doctrine of respondeat superior does not apply and there is no liability insofar as Count 1 is concerned.

Count 2 is based upon the same state of facts, but no where therein does it directly charge that the deceased was drowned or killed as the result of the accident, but that fact may be reasonably inferred from the other allegations contained in the Count. The deceased was employed by the State on State property. He supervised the milking of cows and

probably did other work pertaining thereto. He had driven his own car in aiding relatives to return to their homes. It appears that the conveyance that they boarded was on the opposite side of the river to both the decedent's home and the State Institution. It is charged that the said "James Cash Crews, at the time of the accident aforesaid, was on his way to the State institution located at Kankakee, Illinois; that he was driving said automobile with due care and caution; that he was then and there taking the usual customary and regular route in going to the said State institution." This count was apparently attached for the purpose of bringing the deceased within the terms and provisions of the Workmen's Compensation Act. It does not charge that the decedent was on his way from his home on the usual, customary and regular route, to the institution: it does not aver that the decedent had any business on behalf of his employer upon the street in question or in that vicinity, at that time or any other time, and it does not aver that he was in the performance of his duties.

The question for us to determine is: Did the deceased receive an injury that arose out of and in the course of his employment and was he under the Compensation Act at the time of his death? It appears from the record that his car had run from the street into the river and that he was drowned, and it further appears that he had some few bruises in addition to the drowning. It is generally conceded that every employment under the State is not under the Compensation Act.

In *Landon* vs. *Industrial Com.*, 341 Ill. 51, the employee, Cleary, and three other truck drivers were returning to Chicago and the rear truck which Cleary was driving, went into a ditch. In a telephone conversation, the employer instructed them to leave the truck and also instructed the other drivers to return their trucks to the garage and for Cleary to return home. Cleary had the option of riding to Chicago in one of the other trucks but he rode part way in an automobile and was then overtaken by the truck and without the knowledge of the driver, climbed into the rear end and then endeavored to climb around the side of the truck to the cab and fell and was injured. The court held that Cleary was in the course of his employment but that the accident did not arise out of the employment because he incurred a hazard or danger not in-

cident to the employment. The language of the court in the Landon case throws much light upon the instant case. Therein the court said:

"Whether an employee, when injured in going to or from his work, is in line of his employment depends upon the facts and circumstances of the particular case, but as a general rule a man's employment does not begin until he reaches the place where he is to work and does not continue after he has left the place where he works. (*Dambold* vs. *Industrial Com.*, 323 Ill. 377.)

The cases which hold that an employee injured while going to or coming from his work is within the course of his employment have been cases decided upon the ground that the employment required the particular route to be traveled or the route followed was the only one open to the employee. Where the employee is left to his own choice as to the method of reaching his place of employment or in going home and selects a dangerous route when he could have selected a safe one, his act in so doing is not incident to the employment. (*Lumaghi Coal Co.* vs. *Industrial Com.*, 318 Ill. 51; *Dambold* vs. *Industrial Com.*, 323 Ill. 377.)

An employee must not unnecessarily increase the risk of injury to himself beyond that contemplated in his contract of service or choose an unnecessarily dangerous place for the doing of the act which is claimed to be incident to the employment. (*Weiss Paper Mill Co.* vs. *Industrial Com.*, 293 Ill. 284.)

Where an employee chooses to go to a dangerous place where his employment does not necessarily carry him, and thus increases a danger of his own choosing altogether outside of any reasonable requirement of his work, such risk is not incident to the employment. (*St. Louis and O'Fallon Coal Co.* vs. *Industrial Com.*, 325 Ill. 574; *Terminal Railroad Ass'n* vs. *Industrial Com.*, 309 id. 203; *Nelson Construction Co.* vs. *Industrial Com.*, 296 id. 632; *Lumaghi Coal Co.* vs. *Industrial Com.*, supra.)

In *United Disposal Co.* vs. *Industrial Com.*, 291 Ill. 480, the employee was killed while going to his employment. He chose a route not provided by his employer but one which better suited his convenience. It was held that in so doing he voluntarily accepted unnecessary risk and that the injury which he received did not arise out of his employment."

All employees of the State of Illinois are not under the Compensation Act.

Mr. Walter Cleveland Peters, Chief Clerk of the Kankakee State Hospital testified that the deceased at the time of his death earned "$83.00 plus $6.00 per month commutation." It may be argued that the deceased was receiving compensation for traveling to and from his work. It does not appear in this case that the deceased had any duties to perform away from the Kankakee Institution, and even if $6.00 per month was allowed for transportation purposes, we fail to see how that can change the situation. That was not payment for com-

pensation; at the most, it was merely an allowance for his expense in getting to and from his home.

His employment in this instance had not as yet commenced. From the evidence it appears that he was not on the regular route from his home to the institution, and that he had no duties to perform on Schyler Avenue whatsoever.

In the case of *Public Service Company of Northern Illinois* vs. *Industrial Com.*, 370 Ill. 334, the arbitrator and the Industrial Commission awarded compensation to the widow of the deceased employee and the superior court of Cook County confirmed the Commissioner's award. The award was based upon a finding that death was due to accidental injury arising out of and in the course of the employment. The Supreme Court reversed the judgment of the superior court and the award of the Industrial Commission. The facts, as stated by the court in its opinion, were:

"Beckman was employed by the plaintiff in error about twenty-five years. At the time he died he was a foreman in its gas-generating and pumping department. He worked in Blue Island where he lived, until he was transferred to the company's new plant at Niles Center. He continued to live in Blue Island, but was allowed sixty-seven cents per day to cover the cost of his transportation. The same arrangement was made with another employee, Habenicht, who took turns with Beckman in furnishing an automobile to drive to work. Habenicht was driving and the two were on their way home from work when Beckman was killed in an automobile collision. Beckman had no duties, except those he performed at the plant in Niles Center."

The Court then stated:

"Plaintiff in error contends that Beckman was through work and that his death did not occur in or arise out of his employment. In *Fairbank Co.* vs. *Industrial Com.*, 285 Ill. 11, 13, we said: 'when work for the day has ended and the employee has left the premises of his employer to go to his home the liability of the employer ceases, unless after leaving the plant of the employer the employee is incidentally performing some act for the employer under his contract of employment.'

"The defendant in error relies on our holding in *Irwin-Neisler & Co.* vs. *Industrial Com.*, 346 Ill. 89, and cases therein cited. The facts of that case bring it within the latter part of the rule quoted from the Fairbank Co. case. The employee, there, had been directed to make a business call in LaFayette, Indiana, while he was returning from a vacation, and was hurt when his automobile overturned. We held that although an employee may regularly be employed only at the plant or place of business, yet he will still be in the course of his employment, if he is directed to perform other or even unusual duties elsewhere. In the case before us, Beckman is not shown to have had any duties to perform away from the plant. Whether the sixty-seven cents was wages or expense money is immaterial. His death did not arise out of or in the course of his employment, and his employer, is, therefor, not liable."

And so it is in this case. Whether the $6.00 per month was wages or expense money is immaterial.

The Attorney General had made a motion to dismiss this case. Much evidence was introduced. The claimants have been ably represented but we must hold that the deceased's death did not arise out of and in the course of his employment, and the motion of the Attorney General, therefore, must be sustained.

The petition for compensation will, therefore, be dismissed.