'Clairina Martin *vs.* City of Biddeford.

York.    Opinion, July 11, 1941.

*Robert A. Wilson*, for plaintiff.

*William P. Donahue and Louis B. Lausier*, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J.   This is an appeal from decree of a justice of the Superior Court, affirming decision of the Industrial Accident Commission, awarding compensation to petitioner.

The findings of facts, amply supported by the record, are in their essentials narratively stated as follows:

On February 23, 1940, Henry Martin was employed as a part-time laborer in the street department of the City of Biddeford. The city is divided, for street maintenance purposes, into districts, each supervised by a commissioner.

On the forenoon of that day, Martin was working in a crew engaged in sanding streets in District Number Four. The crew consisted of a truck driver and four helpers, of whom Martin was one. It was the custom in these sanding operations for the commissioner to give instructions to the truck driver as to the

streets to be sanded, and to allot the helpers from a large group available for selection and employment.

The men would board the truck at the city's garage, and, when the sanding was finished, would be let off the truck at the garage or such point on the way to the garage as would be nearest or most convenient to their homes. The truck driver did not undertake to carry any of these men to their homes; he himself kept the truck with him during the lunch hour.

On February 23, Martin went to work at seven o'clock in the morning as a member of the crew of helpers assigned to the truck driven by one Arthur Blais. Blais, as driver, received instructions from the commissioner; the helpers received no instructions other than to go with the truck. Blais was instructed to sand certain streets. Finishing those streets shortly before twelve o'clock, and having some sand left in his truck, Blais proceeded by the city garage to Washington Street to find out whether or not that street had been sanded, and if not, to do so, as he had done on previous occasions, although Washington Street was not on the list received on this particular morning. Finding that Washington Street had been sanded, Blais turned the truck into a private driveway. This was the first opportunity that the men had to get off the truck after the last of the sanding. As the truck went up over the ramp into the driveway, Henry Martin, who had been sitting on the side, lost his balance and fell over backward to the sidewalk. He fractured four ribs, sustaining a punctured pleura and lung, from which he died two days later, on February 25.

Upon these facts the defense contended that the injury was not received "by accident arising out of and in the course of his employment," and was, therefore, not compensable under R. S., Chap. 55, § 8.

Defense further contended that the death of Martin resulted from his intoxication while on duty, and compensation and benefits should have been denied under the provisions of R. S., Chap. 55, § 17.

The Commissioner in his findings noted that the physician who attended Martin after the accident, testified that there was a strong odor of liquor upon his breath, and other evidence that Martin drank a glass of ale about nine o'clock that forenoon. The record in this respect, not detailed by the commissioner, demonstrates that Martin was that morning selected and employed by the commissioner, that he was under the direct supervision of the truck driver and in close proximity to the other helpers. There is no testimony as to the man being at all intoxicated while about his work during the forenoon. The finding of fact against this contention of the defense was justified.

The petitioner, Clairina Martin, is the widow of Henry Martin, but defense contention is that the parties had been living apart for a period of six years and that the petitioner did not qualify as a dependent under R. S., Chap. 55, § 2, VIII, which, so far as applicable, reads as follows:

"The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

(a) A wife upon a husband with whom she lives, or from whom she is living apart for a justifiable cause or because he has deserted her, or upon whom she is actually dependent at the time of the accident."

The facts in this connection are carefully reviewed by the Commissioner, and disclose that in February, 1934, Martin left his wife without cause. About two months thereafter he interviewed his wife solely for the purpose of making arrangements for the sale of a house which they owned. Except occasionally, when she met him on the street, Mrs. Martin did not see her husband until after his injury.

A number of months after he left, she went to work as a housekeeper in the family of a Mr. Berry. She kept house for him and his five children, Berry and his wife having been divorced prior to Mrs. Martin taking the employment there. In

addition, she worked at times and for varying periods in the York mill. In summation, the Commissioner found:

"It is clear that the separation was initiated by the husband, and, apparently at least after the incident regarding the sale of the property, without intent of returning to his wife and children. It is equally clear that Mrs. Martin did not pursue her husband and beg him to return. But careful consideration of all the evidence leads us to conclude that, neither at its inception nor thereafter, did Mrs. Martin consent or acquiesce in her husband's separation.

"Admittedly, Mrs. Martin was not at the time of her husband's accident living with him, or dependent upon his earnings for her support. We do find, however, that she comes within the class described in the statute as 'living apart (from her husband) for a justifiable cause or because he has deserted her,' and, hence, is conclusively presumed to be a dependent under the statute."

In arriving at this conclusion, the Commissioner made application of the legal principles enunciated in *Scott's Case*, 117 Me., 436, 104 A., 794; *Albee's Case*, 128 Me., 126, 145 A., 742; *Moody* v. *Moody*, 118 Me., 454, 108 A., 849; and *Ford* v. *Ford*, 143 Mass., 577, 10 N. E., 474, 475.

Stress was laid in argument, and examination was directed at the hearing, to the point that the petitioner took no steps toward securing a reconciliation, and evidenced no desire for restoration of the marital relations. In cross-examination, endeavor was made to secure an admission from the petitioner that she was satisfied to allow the separation to continue and would not have been willing to effect a reconciliation. She was asked, "If he had come back and asked you take him back, without making any promises to you, would you have taken him back?" She replied, "Well, probably. I don't know until we talked together. We don't know whether we would take him back or not because he never came back."

This particular situation is well taken care of in the opinion of Holmes, J. in *Ford* v. *Ford,* supra, as follows:

"When one party terminates the cohabitation by desertion, the other is not bound to take any steps to restore it. ... Conduct which in itself is proper cannot be made improper by inquiring what he would have done in an event which did not happen."

In the quarter century which has elapsed since the adoption of the Workmen's Compensation Act, its jurisprudence has become established in the sense that its philosophy, its administration, its system, and its principles have been analyzed, expounded and judicially applied with practical unanimity by all courts. Thus, with reference to the finality of findings of fact by the Commissioner, our own reports are replete with judicial decisions which need no citation except to call attention to the recent case of *Eddy* v. *Furniture Co.,* 134 Me., 168, where the question is reviewed. This also applies to the usual phases of the issue as to whether the accident arose out of and in the course of the employment. Repetition of the definitive declaration is hardly necessary, but is well stated by Rugg, C. J., in *McNicol's Case,* 215 Mass., 497, 102 N. E., 697, adopted by our own court in *Willette's Case,* 135 Me., 254, 194 A., 540, 541:

"an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment."

The Commissioner ruled that the facts of the present case were in conformity to the rule thus stated.

In this case a further point not specifically passed upon below is raised by the defense to the effect that, though the rule might have application to the facts relative to the employment, had the employer been a private concern, different rules relative to contractual powers of agents of a municipality are applicable, and the following cases are cited in support of this contention: *Goodrich* v. *Waterville*, 88 Me., 39, 33 A., 659; *Morse* v. *Montville*, 115 Me., 454, 99 A., 438; *Power Co.* v. *Van-Buren*, 116 Me., 119, 100 A., 371; *Bangor* v. *Ridley*, 117 Me., 297, 104 A., 230.

The claim appears to be that the truck driver was instructed to sand certain specified streets, and after completing that work, had no authority to proceed to another street not within the list given him. The defense asserts that, as the truck driver had received no explicit direction to sand Washington Street, the helpers, though not shown to be aware of the fact and required to work wherever the driver directed, though being transported with the purpose of continuing their labor for shoveling sand remaining in the truck, though still within the work period for which they were being compensated, *ipso facto* lost their status as employees and are brought within the rule that he who deals with a municipality must do so at his peril. The factual situation does not support the legal contention. Martin and the other laborers were hired to sand streets as and where directed by their immediate superior. They were transported from place to place for that purpose. They were doing what they had been hired to do and following the directions, not only of their direct boss, but also of the employing authority. *Konopka* v. *Jackson Road Com.*, 270 Mich., 174, 258 N. W., 429; *Beer's Case*, 125 Me., 1, 130 A., 350.

Certain minor issues raised in defense are not discussed, as they were without merit and need no elaboration.

The findings of the Commissioner were warranted, and the

decree thereon is in accordance with established legal principles.

The allowance for burial expenses was made in accordance with R. S., Chap 55, § 15, amended by P. L. of Maine 1939, Chap. 276, § 7.

The rules and formulae for computing compensation were properly applied and there is no dispute as to the amount allowed.

*Appeal dismissed.*
*Decree below affirmed.*
*Court below to fix petitioner's*
*expenses on appeal.*