## JOSEPH FOURNIER'S CASE.

### Androscoggin.    Opinion April 19, 1921.

*Workmen's Compensation Act. In a building where stairways are provided for workmen in going from basement to floors above, a workmen, in violation of .the orders of his employer, with full knowledge of such orders, took hold of a rope used for hoisting bales of cotton from the basement to floors above through trap doors in the floors and received injuries while being hauled up through such trap doors, was not injured in "the course of his employment."*

Where a workman took hold of a rope used for hoisting bales of cotton from the basement of a building up through doors in the floors above and received injuries while being hauled up through such trap doors, which he knew was against the orders of his employer as the evidence clearly shows in this case,

*Held:*

That by so violating the orders of his employer he placed himself outside the course of his employment, there being a stairway provided for use of the workmen in going from the basement to the upper floors.

The words in "the course of the employment" relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or doing something incidental thereto.

The claimant in this case was not in a place where he reasonably might be in the performance of his duties when the accident occurred. He had taken a forbidden way, which the evidence shows he took for his own convenience and not that of his employer.

On appeal. This case was taken to the Law Court on an appeal by defendant from a decision of the Industrial Accident Commission granting compensation to claimant. Claimant was working for defendant in its cotton mills at Lewiston, and took hold of a rope used for hoisting cotton from the basement to the floors above through trap doors in the several floors and was injured there being stairways

provided for workmen in going from basement to floors above, and the Industrial Accident Commission held that he was injured in "the course of his employment" and granted him compensation, from which decree defendant appealed. Appeal sustained. Decree of sitting Justice reversed.

Case stated in the opinion.

*Joseph Fournier, pro se,* for plaintiff.

*Andrews & Nelson, and W. T. Gardiner,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, JJ.

WILSON, J. The claimant, Joseph Fournier, was in the employ of the Androscoggin Mills and engaged in sorting or "mixing" bales of cotton and hoisting them from the basement up stairs through a trap door by means of a rope running over a pulley and attached to an engine or other motor power. At nearly the close of his day's work, wishing to go upstairs to see how many bales of cotton of the different kinds were up there, he took hold of the rope and called to the man operating the hoisting machinery: "I am coming up. Go ahead." The hoisting machinery was started, the claimant was being pulled up through the trap door to the floor above when he began to swing from side to side and as he reached the trap door swung under and struck the floor above and fell to the floor of the basement below receiving the injuries on account of which he now seeks compensation.

The Associate Member of the Industrial Accident Commission found that orders not to use this rope in going up or down between these floors had not been given directly to the claimant; that it did not appear that there was a clear rule understood by the workmen and enforced by the employer; and further that the claimant was actually at work at the time of the accident, and was going up by means of this rope in furtherance of the master's business, and not for any business of his own, and ruled that in so going up by means of the rope the claimant did not place himself beyond the scope of his employment.

While there may not be sufficient evidence of the adoption of a formal rule by the employer relating to the use of this rope as a means of conveyance between the floors of its storehouse where the claimant was employed, we think the finding of fact that orders not to use the hoisting rope for this purpose had not been directly given the claimant

is not warranted from the evidence. The claimant himself expressly admitted the contrary. In reply to the following questions he said:

Q. "Did you hear that there was a rule that no man should go up that rope?"

A. "Yes."

Q. "Had Mr. Thompson (who was the overseer over the claimant) ever given you instructions in regard to going up and down this rope?"

A. "Yes."

Q. "What had he said?"

A. "Said to be careful and not go down that rope."

Q. "Had he told you not to go?"

A. "Not to go by that rope?"

Q. "Yes."

A. "Yes."

It matters not we think whether these orders were given at a prior employment which was interrupted by the claimant's service in the late war. The conditions remained exactly the same so far as the evidence discloses at the time of the injury, and the testimony of the claimant and fellow employees clearly shows that it was understood by them all at the time of the injury that the use of this rope for this purpose was prohibited by their employer. The claimant in response to an inquiry: "Did the men working around there generally know that they were not supposed to go up and down that rope?" said "Yes, sir."

As to whether the claimant was actually at work and at the time was going up the rope in the furtherance of his master's business and by so doing did not place himself outside the scope of his employment is in this case a question of mixed law and fact, and is to be determined upon the following considerations.

The claimant's own reason for doing what he acknowledges he knew was forbidden was, as stated by him: "I wanted to go upstairs and see how many different cottons there was up there. It was kind of late, almost the end of that day, and I thought to go the shortest way. That's how the accident happened." A stairway was provided for the use of the employees in going from the upper floors to the basement and the claimant used this means when he went into the basement on that afternoon to do his work.

The question of the liability of employers under Compensation Acts for injuries to employees received when in some place they were

prohibited from entering, or in the performance of some act they were prohibited by rules or positive orders from doing, has been the subject of much consideration by the courts in the different jurisdictions and no little confusion has arisen as to the principles upon which the various cases have been distinguished.

Some of the Compensation Acts contain provisions that in cases of serious and wilful misconduct on the part of the employee which contributes to the injury the employee is not entitled to compensation. Deliberate violations of rules or orders of the employer made to safeguard the employee against injury have frequently been held to be such serious and wilful misconduct as to bar the employee from compensation under such provisions. *United States Fidelity and Guaranty Co.* v. *Industrial Accident Com. of Cal.*, (1917) 174 Calif., 616; *Nickerson's Case*, 218 Mass., 158.

In other instances where this question has arisen, attempts have been made to distinguish the cases by denying compensation when the violation of the rules or orders took the employee out of the sphere of his employment, and allowing compensation when the violation was only of rules dealing with the conduct of the employee within the scope of his employment. Elliott on Workmens Compensation, 7 Ed., Page 50. *Dietzen Co.* v. *Industrial Board of Ill.*, 279 Ill., 11, 16; *Barnes* v. *Nunnery Colliery Co.*, 5 B. W. C. C., 195; *Kalaszynski* v. *Klie*, 91 N. J. L., 37; *Macechko* v. *Bowen Mfg. Co.*, 166 N. Y. Supp., 822.

There is no provision in the Maine Compensation Act exempting the employer in case the injury resulted from serious and wilful misconduct, hence this phase of it does not concern us.

Where the violation of the rules has clearly taken the employee out of the sphere of his employment, as in the case of an employee employed in the boiler rooms of an electric plant entering the transformer room of the plant where by the rule of the company, which he knew, he was forbidden to enter and where he had no business, *Northern Ill., Light and Traction Co.* v. *Ill. Industrial Board*, 279 Ill., 565; or where the rule violated clearly related to the conduct of the employee within the scope of his employment, as in the case of the workman whose duty it was to oil certain machinery, but it was against the rules or orders of his employer to oil it while in motion, *Mawdsley* v. *West Leigh Colliery Co.*, 5 B. W. C. C., 80; or the domestic whose duty it was to kindle the kitchen fire but was ordered not to

usè for the purpose kerosene or anything similar, but used wood alcohol, *Kalaszynski* v. *Klie*; supra, this rule is sufficiently clear in its application.

It does not, however, clearly indicate the underlying principle upon which such cases must finally be distinguished and upon which we think such rule itself actually rests. The Compensation Act of this State permits recovery only in cases of accident "arising out of and in the course of the employment" and all cases of whatever nature must be reduced to these terms. To say that the violation of one rule took the employee out of the sphere of his employment and another rule only relates to his conduct within the scope of his employment, is only another way of saying that in the one case by reason of the rule the accident did not happen in the course of his employment, while in the other it did occur in the course of his employment because he was at the time actually engaged in doing the work he was engaged to do though doing it in a forbidden way.

Here lies the real test. The phrase "in the course of the employment" is too frequently lost sight of, and is seldom discussed. It is often clear that the accident did not "arise out of," because it did not occur "in the course of," but only the former reason is assigned for the decision. One is just as essential a condition of the right to compensation as the other. If an accident does not occur "in the course of" it cannot "arise out of" the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment. To discuss spheres of employment and rules of conduct only obscures the real issue.

The words "in the course of the employment" relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto. *Westman's Case*, 118 Maine, 133, 142; *Larke* v. *John Hancock, etc., Ins. Co.*, 90 Conn., 303; *Bryant* v. *Fissell*, 84 N. J. L., 72; *Dietzen Co.* v. *Industrial Board*, 279 Ill., 11, 18.

If then the employee is in a place where he is prohibited from being by positive orders of his employer by reason of the danger, or has taken a certain course in going from one place to another which he is prohibited from taking by his employer for the same reason, notwith-

standing it is within the period of his employment and his purpose in going to the other place is to perform some of his duties he is engaged to perform, he cannot be said, while in the forbidden place or while going by the forbidden route or means, to be acting in the course of his employment within the meaning of the Compensation Act, because he is not in a place where he reasonably may be in the performance of any of his duties. *Nelson Construction Co.* v. *Indus. Com.*, 286 Ill., 632, 637; *Powell* v. *Brynder Colliery Co.*, 5 B. W. C. C., 124; *Barnes* v. *Nunnery Colliery Co.*, 5 B. W. C. C., 195; *Borin's Case*, 227 Mass., 452; *United Disposal Co.* v. *Indus. Com.*, 291 Ill., 480, 486; *McDard* v. *Steel*, 4 B. W. C. C., 412. Of course, if he went to the forbidden place for a purpose not connected with his duties *a fortiori* would he be outside the course of his employment. If, however, he is in the place where his duties are intended to be performed and where, of course, he reasonably may be, and is engaged in the performance of them and only violates some rule relating to his conduct while in such performance, he is still acting in the course of his employment even though he performs them recklessly and knowingly exposes himself to danger in violation of orders and, unless the injury can be said to have been inflicted by "wilful intention," may recover compensation.

The claimant in this case was not in a place where he reasonably might be when the accident occurred. He had taken a forbidden way. He was as much in a forbidden place where he could not reasonably be, when he was dangling at the end of a swinging rope between the floors of the building where he was working, as he would have been had he, in order to save time in going to some part of his employer's premises where his next duties were to be performed, passed through a transformer chamber full of high tension wires, which he was forbidden to enter. He took the forbidden course for his own convenience and not that of the master. The case does not show his employer had required the work he was doing to be finished that day.

It is clear, we think, that the accident did not arise in the course of employment of the claimant although within the period of it. The ruling, therefore, that in going up the rope he did not place himself outside the scope of his employment was erroneous.

Entry will be,

*Appeal sustained.*
*Decree of sitting Justice reversed.*