ALBERT S. SULLIVAN'S CASE.

York.     Opinion October 15, 1929.

*George D. Varney*, for petitioner.
*Eben F. Littlefield*,
*William B. Mahoney*, for respondent.

Sitting: Wilson, C. J., Philbrook, Deasy, Barnes, Bassett, JJ.

Bassett, J. Appeal from the decree of a single Justice rendered in accordance with the decision of the Chairman of the Industrial Accident Commission, denying compensation to Albert S. Sullivan for a personal injury.

Sullivan, a boy about eighteen years of age, had been employed in a woolen mill as a general helper for some four weeks. His duty was to carry cloth from one place to another and to assist any of the operatives who might need him. He had been employed in this particular room the day before for the first time. In it was a machine used to shear nap from cloth and operated by one Taber.

The back of the machine was toward the center of the room. In front of and under it was a rack in which a cut of cloth was placed. The cloth ran from a rack up over the front of the machine, under a rapidly revolving cylinder of knives about four or five feet from the floor, and came out into a rack on the back side of and under the machine. When the cuts of cloth were removed from this last rack, it was necessary for the operative to have some one to assist him.

Sullivan had, during the day before, been asked by Taber several times to assist him in removing the cloth from the back rack and had assisted, standing at the back of the machine. He had been around in front of the machine several times when it was stopped but could not recall that he had, when it was in motion. He had seen the blanket of cloth moving up under the cylinder and knew that the cylinder had knives, having seen them when not in motion.

At the time of the accident, about eight o'clock in the morning, the machine was running. Taber had just put on a fresh cut of cloth, which was passing up over the front. He was sweeping up the floor to provide a clean place for laying down the next cut, which would replace the one in the machine when it was taken off. He observed Sullivan coming around the machine from his left and toward the front where he was standing. Sullivan, who had with a fellow worker been carrying cloth from another room into the finishing room and had completed this job, without reporting to the overseer for further orders, walked over to the shearing machine for the purpose, as he said, of ascertaining whether Taber desired his help in removing a cut of cloth from the back rack.

Taber had not called him or given him any signal or indication that he needed him for such purpose nor was there any cloth in the rack apparently ready to be moved. Sullivan, when he reached the machine, made no inquiry of any kind of Taber but after a word of greeting stood near the machine in front while Taber turned his back to sweep up the floor.

Sullivan stated that he went around in front of the machine to ask Taber if the cuts were ready to be taken out and waited for him to finish sweeping before asking; that as he stood waiting, he "just naturally" stepped up to the machine and reached out his hand and "touched the blanket that was moving," "just out of

curiosity," "trying to see how it felt moving along." He was at the time standing about a foot from the machine, looking at Taber, and extended his left hand to the blanket. He could not explain just what did happen, but his hand was carried quickly to the knives and four fingers and a part of the thumb severed.

The Commission quoted from *Saucier's Case*, where the hand of an employee was injured in an exhaust fan, 122 Me., 325, at 330, "We are unable to see how her employment can be ascribed at all as the cause of her injury; it did not call her or require her to go to or near the fan; it was not something that happened as the natural and probable consequence of her employment, but was the result of her own voluntary act, entirely independent of any duty she was required to perform, and one for the sole purpose of satisfying her curiosity." and added, "This language, by merely changing the pronoun and substituting for the word 'fan' the words 'front of the machine' applies with equal force to the present case."

The accident must have arisen "out of the employment" and "in the course of the employment" to entitle the employee to compensation.

It was early held by this court that these words, "arising out of" the employment mean there must be some causal connection between the conditions under which the employee worked and the injury which he received, *Westman's Case*, 118 Me., 133, 143; that the injury must have been due to a risk "because employed," *Mailman's Case*, 118 Me., 172, 180; *Gray's Case*, 123 Me., 88. The subsequent decisions have held that the words refer to the origin or cause of the accident. *Dulac* v. *Insurance Co.*, 120 Me., 39; *White* v. *Insurance Co.*, 120 Me., 67; *Webber's Case*, 121 Me., 412; *Saucier's Case*, 122 Me., 329; *Gray's Case*, 123 Me., 88; *Washburn's Case*, 123 Me., 404; *Healey's Case*, 124 Me., 148; *Beers' Case*, 125 Me., 3; *Fogg's Case*, 125 Me., 170; *Paulauskis' Case*, 126 Me., 34; *Taylor's Case*, 126 Me., 451; *Gooch's Case*, 128 Me., 86.

It was also held in the same two cases that the words "and in the course of" the employment refer to the time, place and circumstances under which the accident takes place. *Westman's Case*, supra, 142; that the injury must have been due to a risk "while employed," *Mailman's Case*, supra, 180. The subsequent decisions

have followed these definitions. *Dulac* v. *Insurance Co.*, supra; *White* v. *Insurance Co.*, supra; *Fournier's Case*, 120 Me., 236; *Charles E. Harriman's Case*, 121 Me., 491; *Fogg's Case*, supra; *Paulauskis' Case*, supra; *Taylor's Case*, supra; *Butler's Case*, 128 Me., 47.

"Both elements must appear." *Mailman's Case*, supra. "One is just as essential a condition of the right to compensation as the other." *Fournier's Case*, supra.

"The words 'in the course of the employment' relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *Fournier's Case*, supra.

"An accident arises in the course of the employment if it occurs, as to time, place and circumstances, during employment, or in the course of activities incidental thereto, at a place where the workman may properly be found, and under circumstances that negative the idea of voluntary self infliction or any statutory bar." *Butler's Case*, supra.

"The phrase 'in the course of the employment' is too frequently lost sight of and is seldom discussed. It is often clear that the accident did not 'arise out of' because it did not occur 'in the course of' but only the former reason is assigned for the decision. . . . If an accident does not occur 'in the course of,' it can not 'arise out of.' " *Fournier's Case*, supra.

No question was raised as to the time. It would seem from the wording of the decision that the Commissioner found that the place where Sullivan was at the time of the accident was not, as in the Saucier Case, a place to which or near which the employee had occasion to go. This finding of fact by the Commissioner is conclusive because there was evidence to support it.

The Commissioner also found that Sullivan's extending his hand to touch the moving cloth was his own voluntary act and, as admitted by Sullivan, done for the sole purpose of satisfying his curiosity. This finding of fact is conclusive.

From these findings of fact, it would follow as a necessary con-

clusion that the injury was the result of Sullivan's own voluntary act done only out of curiosity, entirely independent of any duty required to be performed or incidental thereto, and consequently not in the course of the employment and therefore not arising out of the employment.

The mandate must therefore be

*Appeal dismissed.*
*Decree affirmed.*