MRS. INEZ TOMBERLIN GALLOWAY, WIDOW; CHARLES MILTON GAL-LOWAY, MINOR SON OF CHARLES ELAM GALLOWAY, DECEASED (EM-PLOYEE), PLAINTIFFS, v. DEPARTMENT OF MOTOR VEHICLES, STATE HIGHWAY PATROL, SELF-INSURER (EMPLOYER-CARRIER), DEFENDANT,

and

NATHAN DON DAVIS, FATHER, MRS. EVA MAE HYATT DAVIS, MOTHER OF JOSEPH ROBERT DAVIS, DECEASED (EMPLOYEE), PLAINTIFFS, v. DEPARTMENT OF MOTOR VEHICLES, STATE HIGHWAY PATROL, SELF-INSURER (EMPLOYER-CARRIER), DEFENDANT.

(Filed 1 March, 1950.)

**1. Arrest and Bail § 1b: Highways § 9—**

Where a Highway Patrolman is advised by a person that an armed con-vict had come to her home, made threats, and demanded food, such patrol-man is given authority under G.S. 20-188 to arrest such convict. The word "accused" as used in the statute is used in the generic sense and does not import that the person to be arrested must have been accused of crime by judicial procedure, and armed robbery is a crime of violence within the meaning of the statute.

**2. Same—**

The use of an airplane by members of the Highway Patrol in recon-noitering to locate a person sought to be arrested by them is not a depart-ure from the terms of their employment.

**3. Master and Servant § 40d—**

The death of Highway Patrolmen in a plane crash while attempting to locate and arrest a person accused of a crime of violence *is held* compensa-ble under the Workmen's Compensation Act, since the patrolmen had authority to make the arrest and did not exceed their authority in using an airplane in their attempted discharge of their duties.

DEFENDANT'S appeal from *Moore, J.,* August 1949 Term of CHEROKEE Superior Court.

The compensation claims, subject of this appeal, grew out of a common accident and are consolidated for hearing and consideration. The claims were filed before the Industrial Commission under the Workmen's Com-pensation Act for compensation, respectively, for the injury and death of Charles Elam Galloway and Joseph Robert Davis by accident in the

course of their employment by the Department of Motor Vehicles, self-insurer, while serving as members of the State Highway Patrol.

Galloway and Davis lost their lives in the crash of an airplane being used by them in an attempt to locate in a densely wooded and mountainous section of Cherokee and Clay Counties a man whom they intended to arrest. The evidence discloses that some time prior to the attempt made by these patrolmen an escaped convict or person dressed in convict's clothes, had been hiding in this area and the attempt of the patrolmen to locate and arrest the person was immediately instigated by information voluntarily given by Eva Mae Stevens, who, with her father, went to Andrews to report to Patrolman Joe Bob Davis having seen the person subject of this rumor at her home and related to Davis, one of the above named patrolmen, that fact and the circumstances attending the visit of the man to her home. She had previously reported his presence to other officers who were unable to locate the man.

Miss Stevens testified that she had informed Patrolman Davis that an escaped convict had come to the Stevens home out of the woods, dressed in stripes and having a pistol such as are carried by State Highway Patrolmen. According to her evidence the man stated that he had been watching the house from the woods which was not over 25 yards away, and had come more than once.

The witness stated that there were only two families living about a mile apart in an isolated situation about five miles from any settlement and not upon any highway. She informed the patrolman that the "man dressed in prison stripes was threatening to kill us and anything else he could do and wanted something else to eat." That prior to May 3, which was the date of the death of Galloway and Davis, she had reported the fact that an escaped convict was near her home to Sheriff Swanson of Clay County but that he had failed to apprehend the convict. That on May 3, about two hours before the deceased employee Bob Davis was killed, or about 11 o'clock, that she, with her father, went to the Town of Andrews and she reported the circumstances of the convict, or the man dressed in prisoner's clothes, calling at her home and demanding something to eat, to Joseph Robert Davis, Highway Patrolman, and that Patrolman Davis informed her that he would be there that night to get him.

The claimants' evidence discloses that Patrolman Davis immediately called upon Patrolman Galloway and that together they discussed plans to apprehend the man. Since his supposed hiding place was in a mountainous section cut off on one side by the Tusquitee Mountains and on the other side by a lake, with a difficult road leading into the area and the probability that they might be seen from the mountains or hills as they attempted to enter it in the daytime, they planned to use an air-

plane to reconnoiter the country on the possibility of locating the person sought, with intention of going in on foot to the wooded section after 12 o'clock that night.

In pursuance of that plan they procured a small plane at an airport near Andrews and undertook the flight shortly after the information had been given to them. For some reason which does not appear the plane crashed shortly after taking off and both patrolmen were killed.

Both patrolmen were licensed pilots and one of them had extensive experience in aviation during the late war.

There is evidence that the Department had not expressly or otherwise authorized the use of an airplane by members of the Highway Patrol in their operations, and the evidence does not indicate that it had been forbidden. It does appear that motor cars and other equipment had been furnished them.

It further appears from the evidence that the Highway Patrol by practice of long standing had assisted in the apprehension of escaped convicts; but their authority to perform this duty under the law is questioned or denied by the appellant.

The first hearing was had before Hon. Pat Kimzey, member of the Commission, in which compensation was allowed. The department applied for a review by the full Commission; and the full Commission, striking out the findings of fact theretofore made by Commissioner Kimzey, found facts, made conclusions of law, and made an award denying compensation in both cases.

While the opinion is written by Commissioner Jurney, the formal notice of award bases the final action of the Commission in denying compensation on the conclusion of law that the claimants exceeded their authority in using an airplane in reconnoitering in attempting to apprehend the fugitive. (Record, pp. 108-109.) The claimants appealed from the judgment of award by the Industrial Commission and the matter was heard before Moore, J., at August 1949 Term of Cherokee Superior Court. Upon a hearing of the matter Judge Moore reversed the judgment of the Industrial Commission, finding that upon the evidence the patrolmen Galloway and Davis received their injury and death by accident arising out of their employment and in its course. The defendant appealed.

*E. C. Bryson, T. D. Bryson, Jr., and McKinley Edwards for plaintiffs, appellees.*

*Attorney-General McMullan and Assistant Attorneys-General James E. Tucker and Peyton Abbott for defendant, appellant.*

16—231

SEAWELL, J.   Although the final award of the Industrial Commission denying compensation to the above claimants, using identical language in each case, was expressly predicated on the legal conclusion that they had exceeded their authority in using an airplane in attempted reconnoiter to locate the person they intended to apprehend, and not upon their want of authority to make the arrest, (and the main argument here is still pitched on that ground), counsel insists that the members of the State Highway Patrol have no power to arrest an escaped convict, and that Galloway and Davis in the attempt to do so were acting without the scope of their employment and should be denied compensation.

The evidence discloses that for a long while the Highway Patrol had been customarily exercising that power; and it is agreed between the parties that there had been no instruction or ruling whatever on the matter, either directive or inhibitive,—as to the use of this convenient, not unusual, and seemingly effective instrumentality in the process of apprehension and arrest of offenders against the law.   Whether this was under the direction of the employing Department or simply with their acquiescence does not appear; but it is an activity which from the widespread distribution of the State Patrol, their knowledge of the highways and their facilities for instant intercommunication they are well fitted. But we do not find it necessary to pass upon the authority of the patrolmen to make an arrest of "escaped convicts," or to say whether the defense is available to the appellant which might, if a private employer, be somewhat bound by custom and mutual dealing between the parties. Leaving this aside, the appeal hinges more immediately on the question whether the claimants, members of the State Highway Patrol, had legal authority to arrest the person described in the information given to them by or through Miss Stevens because of the conduct of the man described as an escaped convict on his visit to her home.   The appellees contend that the information in its particulars amounted to an accusation of a criminal offense on the part of the supposed convict, committed on his visit to the home, which justified his arrest by a State Highway Patrolman regardless of his status as a convict or perpetrator of any previous offense.   This requires a critical examination of the statute invoked by the claimants-appellees as conferring such authority.

The limited jurisdiction of the Highway Patrol, ordinarily confined to violations of highway or traffic laws and regulations, is extended to offenses not thus related by G.S. 20-188, which reads as follows:

"The state highway patrol shall have full power and authority to perform such additional duties as peace officers as may from time to time be directed by the Governor, *and such officers may at any time and without special authority, either upon their own motion or at the request of any sheriff or local police authority, arrest per-*

*sons accused of* highway robbery, bank robbery, murder, *or other crimes of violence."*

The power given to the Governor as the chief executive officer of the State, Constitution, Article III, Section 1, to meet from time to time emergent conditions, such as mass violations of law with which the ordinary civil constabulary is insufficient to deal, came into the law as a logical and salutary provision soon after the organization of the Highway Patrol. The part of the statute relied upon by the appellee, however, has nothing to do with the gubernatorial authority and there is no evidence that it was had. It is confined to the latter part of the statute, (underscored for separate attention), which provides that "such officers may at any time and without special authority either upon their own motion or at the request of any sheriff or local police authority, arrest persons accused of highway robbery, bank robbery, murder, or other crimes of violence."

The contention of the appellees is that the officers who undertook to find and arrest the subject of Miss Stevens' information had authority to act in the premises "upon their own motion" because her information amounted in substance to an accusation of a "crime of violence" within the purview of the statute, to wit: Armed robbery from the person, since he was fed or food given him because his statement that he wanted something more to eat was backed by a display of firearms and a threat to kill. We think this statement, made to the patrolman, may be reasonably so construed.

In the argument here the defendant Department points out that according to the statement of Miss Stevens the "escaped convict" was from a distant state, "2,000 miles away"; but there is no evidence that that information was conveyed to the patrolmen. In the much narrowed area of discussion as to the source of authority it makes no difference as to the status of the man sought as an escaped convict—whether he wore stripes or dungarees, or hailed from Kalamazoo or Timbucktu. He was a man accused of a crime definitely analogous to those named in the cited law, or if not so, then covering a still more extensive category as a crime of violence and it makes no difference whether we apply the principle *ejusdem generis* to the latter phrase or accept it as an independent delegation of authority.

It is clear, we think, that the term "accused" was not used in the law in a technical sense but in the generic and popular sense. It is defined in Bouvier's Law Dictionary as:

"To charge or impute the commission of crime or immoral or disgraceful conduct or official delinquency. It does not necessarily import the charge of a crime by judicial procedure; *State v. South,*

5 Rich (S.C.) 489, 493; *Com. v. O'Brien,* 12 Cush. (Mass.) 84; *Robbins v. Smith,* 47 Conn. 182; 1 C. & P. 479."

We note the extent of the power given to the Highway Patrol under this statute,—and we have carefully considered this in its bearing on the correct interpretation; but we can reach no other result as to the legislative intent. With the propriety of the legislation we have nothing to do—that is a matter of legislative discretion, political rather than juridical.

The contention that the claimants departed from the terms of their employment by using an airplane in an effort to locate or find the man they sought to arrest is without merit. There is nothing novel or unusual in the use of an airplane for any purpose for which it is suitable, either in transportation or reconnoiter. The evidence tends to show that its use in the manner intended had been attended with success in other instances. Bearing on this phase of the case see *Fournier's Case,* 120 Me. 236, 113 A. 270, 272, 23 A.L.R. 1156; *Archie v. Lumber Co.,* 222 N.C. 477, 23 S.E. 2d 834; *Travelers Ins. Co. v. Burden,* 94 F. 2d 880.

For these reasons the judgment of the Superior Court must be affirmed. It is so ordered.

*Galloway v. Department of Motor Vehicles*—Affirmed.

*Davis v. Department of Motor Vehicles*—Affirmed.