**Jeffery R. WING**

v.

**CORNWALL INDUSTRIES and/or Lumbermens Mutual Casualty Company.**

Supreme Judicial Court of Maine.

Argued June 6, 1980.

Decided Aug. 18, 1980.

John S. Jenness, Jr., South Paris, orally, for plaintiff.

Richardson, Tyler & Troubh, Ronald D. Russell, orally, Robert L. Hazard, Portland, for defendant.

Before McKUSICK, C. J., WERNICK, NICHOLS, and GLASSMAN, JJ., and DELAHANTY, A. R. J.

WERNICK, Justice.

Jeffery Wing, a worker in the employ of Cornwall Industries, the employer, has appealed from a pro forma judgment entered in the Superior Court (Oxford County) which affirmed the decision of the Workers' Compensation Commission denying the worker's Petition for Award of Compensation on the ground that the worker was not in the course of his employment when he sustained the injury made the basis of his compensation claim. We deny the appeal and affirm the Superior Court judgment.

On February 5, 1979, the day he sustained his injury, Wing was employed by Cornwall Industries, working as a janitor. On his regular work time, he was proceeding through the plant moving a cart on which were two barrels filled with rubbish. Coming to a door leading out of the building, Wing tried to open it in order to take the barrels outside. The door strongly resisted opening, apparently because of a partial vacuum created by large exhaust fans inside that particular room. As soon as Wing did get the door open, suction caused by the opening of the resisting door pushed the barrels off the cart, and debris spilled on the floor. As he was trying to walk around one of the barrels, Wing tripped over it (or he may have kicked it). He then picked up a barrel, raised it over his head and threw it at the door. Wing thereupon walked to an adjoining room.

The evidence is conflicting as to what subsequently happened. Wing testified that after he walked into this other room, he was trying to regain his composure. He said that he turned to face the wall immediately to his right and that he brought his left hand up to the wall intending to rest his head on that hand and lean against the wall. As he was doing this, he testified, his left hand happened to strike against the wall causing injury to his left hand. However, another employee, who was in the room when Wing entered and who, at the time, was standing about twenty feet from Wing, testified that he saw Wing enter the room, pivot quickly to his (Wing's) right and punch the wall, the blow causing a loud noise.

The injury Wing sustained was a fracture of the fourth and fifth metacarpals of his left hand.

In denying the Petition for Award of Compensation, the Commissioner said:

"This Commission finds as a fact that Jeffery R. Wing sustained his injury as a result of a deliberate and intentional act on his part, which did not *repeat not* take place in the course of his employment." (emphasis in original)

Wing challenges the correctness of the Commissioner's conclusion, arguing that by analyzing the case under the standard of "course of the employment", the Commissioner was led astray. Apparently, the worker proceeds on the premise that it is not open to rational argument that he sustained his injury "in the course" of his employment. Hence, he contends that the Commissioner's analysis should have been directed to the causal relationship between his employment and his injury, as connoted by the legal standard "arising out of" the employment, more particularly so in light of the Commissioner's explicit reference to the worker's having sustained his injury "as a result of a *deliberate and intentional* act on his part." (emphasis added) The worker argues that had the Commissioner reasoned in the terms of causation, the Commissioner could not have avoided recognizing that stresses of the employment can be such as to generate emotional reactions of frustration and anger and that "deliberate and intentional" acts done by workers under the influence of such emotions can, therefore, "arise out of" the employment.

We reject Wing's contention that the Commissioner was legally wrong in analyzing the case in terms of the "in the course of" employment criterion and that it was error of law for the Commissioner to conclude that Wing sustained his injury outside the course of his employment.

■ To entitle the worker to an award of compensation his injury must *both* be sustained "in the course" and "arise out" of his employment; 39 M.R.S.A. § 51 (1978).

*Moreau v. Zayre Corp.*, Me., 408 A.2d 1289, 1292 (1979); *Blackman v. Harris Baking Company*, Me., 407 A.2d 21, 22–23 (1979); *Wolfe v. Shorey*, Me., 290 A.2d 892, 893 (1972).

The legal criterion "in the course of" employment directs attention basically to the temporal and spatial circumstances of the worker's sustaining of injury. *See Moreau v. Zayre Corp., supra*, 408 A.2d at 1292; *Blackman v. Harris Baking Company, supra*, 407 A.2d at 23; *Gilbert v. Maheux*, Me., 391 A.2d 1203, 1205 (1978); *Fournier's Case*, 120 Me. 236, 240, 113 A. 270 (1921). In more sharply refined terms it concentrates upon whether the worker's injury

> "occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *Fournier's Case, supra*, 120 Me. at 240, 113 A. at 272.

It is, therefore, not enough to justify an award of compensation that the general employment situation has causal relation to a worker's injury, so that the injury may be said to "arise out of" the employment; it is further requisite that the sustaining of injury be particularly tied to a time, a place and the performance of employment duties, or the incidents thereof, such that the injury may be found to have originated "in the course of" employment.

Thus, in *Sullivan's Case*, 128 Me. 353, 147 A. 431 (1929) this Court sustained a Commissioner's conclusion that a worker sustained his injury outside the "course of his" employment when his hand was cut off by a moving cylinder of knives on a machine just after the worker, who had no immediate work to do in the vicinity of the machine and who was acting "out of curiosity" to see how the cloth being moved on a machine felt, had extended his hand onto the cloth moving on the machine. The rationale of decision was that the Commissioner was entitled to conclude that "the injury was the result of . . . [the worker's] own voluntary act done only out of curiosity, entirely independent of any duty re-

quired to be performed or incidental thereto." *Id.*, at 358, 147 A. at 432.

In *Sullivan's Case* this Court took pains to point out that the evidence provided rational support for the particular findings of fact made by the Commissioner. One such critical finding was that when the worker sustained his injury, he was at a place where he had no occasion to be in order to perform his work duties or to do something incidental to them. *Sullivan* thus teaches that a given set of circumstances may permit rational Commissioners properly to differ in making findings of fact regarding whether or not there has been such a deviation from the performance of work duties, or their reasonable incidents, as would lead to an ultimate conclusion that, correspondingly, the worker's injury did, or did not, occur "in the course of" the employment.

In light of this lesson of *Sullivan*, we think that the root issue of the case at bar is exposed by the following line of reasoning. Suppose that the Commissioner had said, here, only:

> "This Commission finds . . . that Jeffery R. Wing sustained . . . [an] injury . . . which did not take place in the course of his employment."

Since there was no request for particular findings of fact, the inquiry would be whether the evidence provided support for findings of fact which, as attributed to the Commissioner, would furnish rational basis for his ultimate conclusion that the injury was sustained outside the "course of . . . employment." *See Gorrie v. Elliott Jordan & Son, Inc.*, Me., 408 A.2d 1008, 1011 (1979).

In accordance with *Sullivan, supra*, it would be rationally open to the Commissioner on the evidence, here, to conclude that when Wing sustained his injury, he was not at a place where he was reasonably expected to be in the performance of his job and, in addition, the acts in which he then engaged were not related to the performance of his actual work duties or any reasonable incidents of them. Accordingly, the Commissioner could be upheld in his ultimate conclusion that the sustaining of injury was not "in the course of" the worker's employment.

In light of this hypothetical analysis the critical question, here, is whether the Commissioner has foreclosed such an analysis in the actual situation before us, which involves one additional circumstance: the express statement by the Commissioner that the worker's injury was sustained as a result of a *"deliberate and intentional* act on his part . . . ."* (emphasis added)

The determinative inquiry is whether the Commissioner was saying that regardless of any and all other considerations, the fact *alone* that the *deliberate and intentional* conduct by the worker was immediately connected with his sustaining an injury precluded a conclusion that the injury was sustained in the course of his employment—on the rationale that the deliberate and intentional nature of what the worker had done was tantamount to his being on a "frolic of his own." *See Bouchard v. Sargent, Inc.,* 152 Me. 207, 209, 127 A.2d 260 (1956).

We conclude that the Commissioner's language should not be so interpreted. We note, first, that the Commissioner carefully used the words "deliberate and intentional" to modify only the *act* of which the injury was the result; he did *not* say that the worker intended, with deliberation, "to bring about the injury . . . [to] himself", thus to invoke 39 M.R.S.A. § 61 as the basis for denying compensation. Second, we would be reluctant to conclude that the Commissioner was ignorant of, or had overlooked, cases like *Bennett's Case,* 140 Me. 49, 33 A.2d 799 (1943) establishing that entitlement to compensation is not defeated by the fact *alone* that the act of the worker resulting in injury is highly likely to cause injury or is such as knowingly exposes the worker to injury. We would not so conclude unless that conclusion were forced upon us because we could discern no other reasonable explanation for the Commissioner's language, "deliberate and intentional act on his part."

Here, we do find such other reasonable explanation. As we have already mentioned, there was no dispute about the material facts of this case, except in one particular: the conduct of the worker immediately before he sustained his injury. As to that, the worker's testimony was that in bringing his left hand in contact with the wall, he did not intend to strike the wall; he intended only to place his hand lightly against the wall so that he could rest his head on it to regain his composure. That his hand struck the wall was an unintended act. Another employee, however, testified that he saw the worker, Wing, pivot toward the wall and punch it with his left hand and that the blow made a loud noise.

We take the Commissioner's language to be referring to this *one* area of *factual* dispute and as disclosing the Commissioner's determination of it. As the Commissioner expressly states, he is making a "finding" of fact that it was a "deliberate and intentional" act (striking of the wall),— and not, as the worker testified, an unintended or accidental striking of it,—that produced the worker's injury.

Thus, specifically rejecting the worker's contention on the one material factual aspect of the case in dispute, the Commissioner reached the ultimate conclusion that in *all* the circumstances the worker's sustaining of injury was *not* "in the course of" his employment.

■ We sustain this ultimate conclusion of the Commissioner. We see in it no misconception by the Commissioner of the meaning of the legal criterion "in the course of employment." Moreover, we deem the conclusion the Commissioner reached, by the application of that legal criterion to all the factual circumstances, a judgment call lying within the special expertise and experience of the Commissioner as well as within a range that would permit various Commissioners rationally to arrive at differing conclusions.

We deem it a rational approach by the Commissioner to conclude, here, that even if the performance of the worker's employment duties (opening resistant doors to unload the trash barrels) gave rise to the worker's frustration and anger and even if, generally speaking, some degree of venting emotions so arising might be "incidental" to

the performance of work, limits of reasonableness must attach. As this point is made in 1A Larson, The Law of Workmen's Compensation, § 21.81:

> "the word 'incident' contains an element of the usual and reasonable, both as to the needs to be satisfied and as to the means used to satisfy them. If either is extraordinary, the action is no longer viewed as incidental."

On the totality of the facts, here, we cannot say that the Commissioner exceeded bounds of rationality in concluding that the worker was acting beyond the reasonable limits of what was "incidental" to the performance of his duties when, after having angrily lifted a barrel from the floor and hurled it at the door, the worker then left the room where the debris was spilled and which he had responsibility to clean up, and walked into an adjoining room where, pivoting toward the wall, he punched a blow at the wall with his left hand and did it hard enough to make a loud noise and to cause a fracture of the fourth and fifth metacarpals of that hand.

In the absence of evidence, here, that conditions at the plant were unusually stressful or otherwise likely to lead to explosions of anger or frustration by workers, we are satisfied that the Commissioner's judgmental application of the legal criterion "in the course of employment" to the facts found in this case involved no misconception of the meaning of the legal standard, was neither arbitrary nor without rational foundation and was in an area in which an appellate court should defer to the Commissioner's special expertise. *See Jacobsky v. D'Alfonso & Sons, Inc.*, Me., 358 A.2d 511, 514–515 (1976).

We decide, then, in sustaining the Commissioner's decision, that he did not misconceive the meaning of the legal standard he applied to the facts found and that his judgmental application of the legal standard to the facts found was not, *as a matter of law*, wrong. We take the precaution to emphasize that neither do we decide that it was *required as a matter of law*. Had the Commissioner made the judgmental call the other way in favor of the worker, our decision would also be to sustain his conclusion. In short, we do not interfere because the Commissioner's determination was within an area of his special expertise and experience and fell within a decisional range in which reasonable Commissioners, acting rationally, could differ.

The entry shall be:

Appeal denied; judgment affirmed.

It is further ordered that the appellees pay to the appellant $550.00 for his counsel fees, plus his actual and reasonable out-of-pocket expenses of this appeal.

All concurring.