Thomas **GORDON**

v.

**COLONIAL DISTRIBUTORS and Federal Insurance Company.**

Supreme Judicial Court of Maine.

Argued Nov. 19, 1980.

Decided Feb. 11, 1981.

Wheeler, Arey & Millett, P.A., James E. Millett (orally), Clyde L. Wheeler, Waterville, for plaintiff.

Weeks, Hutchins, Frye & Welch, Timothy O'Donnell (orally), Waterville, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

Thomas Gordon, a route salesman employed by Colonial Distributors, has appealed from a pro forma judgment entered in the Superior Court (Kennebec County) which affirmed the decision of the Workers' Compensation Commission denying his Petition for Award of Compensation on the ground that the employee's injury did not arise out of or in the course of his employment. We deny the appeal and affirm the Superior Court judgment.

In his employment as a route salesman, Gordon was required to prepare and turn in each day's orders at the employer's offices in Waterville no later than 7:00 a. m. the following day. Gordon testified to the following: On February 13, 1979, he did not turn in that day's orders immediately after work. He spent the evening at the Elks Club playing cards, after which he drove home around midnight, slept, and then left for the office at 4:00 a. m. in order to prepare and turn in the previous day's orders by the 7:00 a. m. deadline. Part way to the office Gordon realized that he had left his order pads at home, so he drove back to his house. Driving towards his home he skidded and hit a telephone pole, injuring his left knee.

Gordon was taken to the hospital where Robert Hochmuth, the employer's sales manager, spoke with him. Hochmuth testified that Gordon admitted that he had not left the Elks Club until 3:30 a. m. and had hit the pole while driving home. Gordon objected to this testimony on the grounds that none of the requirements of 39 M.R.S.A. § 112 [1] were satisfied; and that, there-

---

1. 39 M.R.S.A. § 112 provides:

No statement, except made in proceedings before the Workers' Compensation Commission, to any investigator or employer's representative, of any kind, oral or written, recorded or unrecorded, made by the injured employee shall be admissible in evidence or considered in

fore, the statement was not admissible at the hearing.

In his decision, the Commissioner ruled that Hochmuth's testimony was admissible as a prior inconsistent statement solely for the purpose of impeaching Gordon. The Commissioner went on to say, however, that "[e]ven if that statement ... were found to be not admissible, I still find the employee's testimony to be so incredible as to be not worthy of belief and thus I do not believe him."

## I.

■ The plain language of § 112 forbids the admission of Hochmuth's testimony even for the limited purpose of impeachment. The statute states that unless the listed safeguards are observed, no statement made by the injured employee to a representative of the employer shall be considered in any proceeding under Title 39 *in any way. Accord, Niekro v. Brick Tavern,* 66 Mich.App. 53, 238 N.W.2d 537, 539–40 (1975) (Statute which states that certain statements "cannot be used as evidence" held to bar use of such statements for impeachment purposes).

■ Legislative history indicates that one reason for enacting § 112 was to "equalize the score" between an unsophisticated employee and an employer's representative by requiring that the employee be advised of his rights before his statements may be used against him. 3 Me.Legis.Rec. 4644 (1973) (Remarks of Rep. McTeague). The employer argues that this purpose would be adequately served by merely prohibiting the employer from using state-

ments not meeting § 112's safeguards in his case in chief, as is done in criminal cases with statements made by an accused under conditions not meeting the safeguards required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971); *State v. Myers,* Me., 345 A.2d 500, 502 (1975) (Statement made by accused without *Miranda* warnings is admissible to impeach accused). The analogy is not apt. In a criminal case, a heavy burden of proof rests upon the State—the defendant is not required to testify in order to avoid conviction. Oftentimes admissions made by a defendant in custody will be the State's most damaging evidence, admission of which may be indispensable to the State's meeting its burden of proof. If the admissions are excluded from the State's case in chief, the defendant may prevail without ever taking the stand. Thus, Chief Justice Burger in *Harris* could state with regard to *Miranda* violations that "[a]ssuming that the exclusionary rule has a deterrent effect ..., sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief." 401 U.S. at 225, 91 S.Ct. at 642.

In proceedings before the Commission on a Petition for Award of Compensation, however, the employee has the burden of proof. In most cases, if he is to prevail, the employee *must* testify, and his testimony must be believed by the Commission. In nearly every case, therefore, the employer would be able to make use of inconsistent employee statements taken under conditions which do not satisfy § 112 to discredit

any way in any proceeding under this Title unless:

1. It is in writing;
2. A true copy of said statement is delivered to the employee by certified mail;
3. The employee has been previously advised in writing:
   A. That the statement may be used against him;
   B. That the employer (insurance carrier) may have pecuniary interest adverse to the employee;
   C. The employee may consult with counsel prior to making any statements;

D. The employee may decline to make any statement;
E. The employer may not discriminate against him in any manner for refusing to make such a statement or exercising in any way his rights under this Title.

This section shall not apply to agreements for the payment of compensation made pursuant to the Workers' Compensation Act or to the admissibility of statements to show compliance with the notice requirements of sections 63 and 64.

the employee's testimony. Employers would have little incentive to comply with § 112. Thus, the "score" would not be equalized and the purpose of the statute would be defeated.

■ The Commissioner erred by admitting Hochmuth's testimony. However, the Commissioner specifically stated that even without Hochmuth's testimony he did not believe Gordon's story. If the written record, disregarding Hochmuth's testimony, does not rationally forbid the Commissioner's disbelief of Gordon's testimony, *see Qualey v. Fulton*, Me., 422 A.2d 773, 776 (1980), the admission of Hochmuth's testimony may have been harmless error. Where the record reflects good reason to find the testimony suspect in terms of credibility and the Commissioner specifically states that he has disregarded the testimony for that reason, its admission may be found to be harmless error. We so hold in this case.

## II.

■ Where, as here, the appellant does not ask the Commissioner to make specific factual findings and conclusions of law pursuant to 39 M.R.S.A. § 99, we must resolve all questions of fact in favor of the Commissioner's decision and must sustain that decision unless the record fails to disclose any reasonable basis for it. *Hazelton v. Roberge Roofing*, Me., 414 A.2d 900, 903 (1980). In the instant case, we need assume as a factual finding only that the Commissioner did not believe that Gordon left his home for his employer's office at 4:00 a. m., and that part way there he turned back to retrieve his forgotten order pads.

Other testimony is inconsistent with Gordon's testimony on this very point. In explaining why he left at 4:00 a. m., Gordon testified that he normally was in the office by 5:00 a. m. if he had not turned in his orders the previous evening, and that he waited until the following morning to turn in his orders about half the time. Walter Simcock, the owner of Colonial Distributors, testified that to the best of his knowledge, Gordon had *never* come to the office be-

tween 4:00 and 5:00 a. m. to prepare orders; nor had the police, who usually reported unusual conditions to Simcock, ever reported that lights were on or people present at the office between 4:00 and 5:00 a. m.

■■ A Commissioner's determination of a witness's credibility will seldom be overturned upon review, even if the witness's testimony is without direct contradiction. *See Qualey v. Fulton*, Me., 422 A.2d 773, 775–76 (1980). Plainly then, where other testimony casts doubt upon the very testimony which the Commissioner did not believe, there is rational support in the written record for the Commissioner's disbelief of the Appellant's testimony.

Disregarding Gordon's explanation of the accident, the evidence shows that Gordon was home about midnight, left at an unspecified time, and that his car hit a telephone pole as he was driving towards his home at about 4:00 a. m. No evidence connects this trip with Gordon's employment. The Commissioner drew the rational inference that Gordon's injury was not causally related to his employment, and that Gordon was not acting "within the period of his employment at a place where the employee reasonably may be in the performance of his duties . . . ." *Wing v. Cornwall Industries*, Me., 418 A.2d 177, 179 (1980). In other words, the injury did not "arise out of," nor "in the course of" Gordon's employment. *Id.*

The entry is:

Appeal denied; judgment affirmed.

It is further ordered that the appellees pay to the appellant $550.00 for his counsel fees, plus his actual and reasonable out-of-pocket expenses for this appeal.

All concurring.