John A. COLEMAN

v.

BALLENGER AUTO COMPANY and
Aetna Casualty & Surety.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1982.

Decided June 3, 1982.

Shortill & Shortill, Thomas F. Shortill (orally), Sanford, for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), Roderick R. Rovzar, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The employee, John Coleman, appeals from a *pro forma* decree of the Superior Court affirming the decision of the Workers' Compensation Commission which denied the employee's Petition for an Award of Compensation. Coleman had sought compensation for a knee injury he sustained when he twisted his knee getting out of an MG Midget automobile that he had just moved from its position on the employer's lot and parked in the employer's garage. The case is disposed of by resolution of a single issue on this appeal: whether the Commissioner committed legal error in admitting and considering a statement of the employee obtained without compliance with the requirements of 39 M.R.S.A. § 112. We vacate the judgment below and remand for further proceedings.

I.

The incident occurred on July 16, 1980. Coleman claimed that as he was getting out of the car, after having parked it in the garage, he twisted his knee and sustained the injury for which he sought compensation. The Commissioner found as a fact that the twisting incident of July 16, 1980, "is a causative factor which ultimately resulted in the arthroscopy ...." which caused the employee's period of claimed disability. However, the Commissioner denied compensation to the employee for the reasons "that the employee has failed in its [sic] burden of demonstrating that that twisting incident in getting out of an MG automobile in [sic] July 16, 1980 arose out of and in the course of his employment with Ballenger Auto Company."

The evidence on disputed factual points pertinent to resolution of the case concerns the relationship between the circumstances of Coleman's employment and his moving of the car. Coleman testified that the duties of his job included "repairing automobiles ... driving vehicles in and out of the building and parking them in various places." Ballenger's general manager, Steve McCann, confirmed that Coleman's duties included moving cars. Coleman stated that he "brought *our Ballenger's Auto* little MG Midget automobile and drove it around the building inside the garage, into the garage *to park it for the night....*' (Emphasis added.) Both of these witnesses testified that Ballenger allowed employees to work on their own cars on the premises of the employer. McCann also noted that around the time the accident occurred Coleman was working on a 1972 Chevelle wagon which Coleman was considering buying from Ballenger. That purchase, however, never did take place.

On the question of when the accident occurred, Coleman asserted that it happened around 5:30, after everyone else in the immediate area had gone home for the day. His testimony was corroborated by that of another witness, Jane Goodall, who testified that she saw Coleman at around 5:30 p. m. when she was looking at cars in back of Ballenger's garage. She testified that he told her at that time that he had just hurt himself. Goodall's testimony as to the time of that conversation was based, however, on her general recollection. McCann was permitted to testify that he talked to Coleman the day following July 16, and that his "understanding of the conversation [was that the accident] happened around 7:00 o'clock at night."[1] McCann also intimated that he had talked with Coleman sometime during the evening of July 16.

McCann also testified that Coleman's time-card indicates that Coleman punched out at approximately 5:20 p. m. He stated that Coleman had not been compensated for

---

1. It is the admission of this testimony by the employer that generates the issue under 39     M.R.S.A. § 112.

any work done after 5:20 on the day of the accident. Coleman's check stub shows that he worked 9.3 hours of overtime that week. Coleman, however, could not interpret from his time-card the time when he had punched out that day. Moreover, he could not recall whether the accident occurred before or after he punched out. Coleman did note that in addition to using a time-card, he was permitted to report his hours verbally. The existence of this practice was not refuted by McCann. McCann could not recall ever asking Coleman to work overtime after he had punched out. McCann admitted that Coleman did not report to him the hours Coleman worked.

The Commissioner found that the employee was totally disabled from January 16, 1981, the date of the arthroscopy, to May 15, 1981. He nevertheless, for the reason previously set out, denied compensation to the employee.

## II.

We first approach the issue of the propriety of the admission into evidence of the employer's testimony that he understood, as the result of *a conversation* he had with the employee the day following the injury, that the accident occurred at 7:00 p. m. At the time of the admission of that statement, and at all times thereafter, it was clear that the employer's testimony was founded upon a statement made by the injured employee subject to the requirements of 39 M.R.S.A. § 112.[2] It is likewise clear that the statement had not been obtained in compliance with those statutory requirements. No objection on the basis of that statutory provision was registered by the employee to the testimony of the employer. Objection was made on the premises that the testimony was hearsay and that it was conclusory. Those objections were overruled by the Commissioner. A comment by the Commissioner at that time clearly indicated, however, that he was well aware of the provisions of section 112 and of this Court's most recent interpretation of that section in *Gordon v. Colonial Distributors*, Me., 425 A.2d 625 (1981).[3]

In *Gordon*, we held that "the language of section 112 forbids the admission of [a

---

**2.** Title 39 M.R.S.A. § 112 provides as follows:

No statement, except made in proceedings before the Workers' Compensation Commission, to any investigator or employer's representative, of any kind, oral or written, recorded or unrecorded, made by the injured employee shall be admissible in evidence or considered in any way in any proceeding under this Title unless:

    1. In writing. It is in writing;

    2. Delivery of true copy to employee. A true copy of said statement is delivered to the employee by certified mail;

    3. Employee advised in writing. The employee has been previously advised in writing:

    A. That the statement may be used against him;

    B. That the employer (insurance carrier) may have pecuniary interest adverse to the employee;

    C. The employee may consult with counsel prior to making any statements;

    D. The employee may decline to make any statement;

    E. The employer may not discriminate against him in any manner for refusing to make such a statement or exercising in any way his rights under this Title.

This section shall not apply to agreements for the payment of compensation made pursuant to the Workers' Compensation Act or to the admissibility of statements to show compliance with the notice requirements of sections 63 and 64.

**3.** The precise tenor of the colloquy between employee's counsel and the Commissioner at the time of the admission of the evidence in question was as follows:

Q Do you know whether Mr. Coleman was injured at any time between the time he started that day and the time he punched out.

A No

Q And do you know whether or not Mr. Coleman was injured at all on that day?

A Yes. I was told he was.

Q And did you speak to Mr. Coleman about his injury?

A Yes, I did.

Q And did he tell you what time it occurred?

COMMISSIONER: Do you object?

[Employee's Counsel]: Yes, I do.

COMMISSIONER: Grounds?

[Employee's Counsel]: Hearsay.

COMMISSIONER: That's the only grounds? Objection overruled. Go right ahead.

A We talked the next day. My understanding of the conversation, it happened around 7:00 that night.

[Employee's Counsel]: Objection. His understanding is not an issue.

statement that does not comply with the safeguards of that section] even for the limited purpose of impeachment" of the employee. The Commissioner's explicitly recited familiarity with that case must lead us to suppose that he was familiar with the rationale by which that holding was derived as well as with the plain meaning of the language of section 112. That rationale takes as its cornerstone that "one reason for enacting § 112 was to 'equalize the score' between an unsophisticated employee and an employer's representative by requiring that the employee be advised of his rights before his statements may be used against him." *Gordon*, 425 A.2d at 627. We conclude in *Gordon* that to allow such statements to be used even to impeach an employee who testified before the Commissioner, would defeat that purpose by creating a situation where, because of burden of proof requirements, they would nearly always be admissible if allowed for that narrow purpose. Thus, "[e]mployers would have little incentive to comply with § 112." *Id.* at 628.

It is clear that the Commissioner was aware from his familiarity with the *Gordon* case that the evidence offered here was not properly admissible over proper objection to impeach the employee's testimony as to the time the injury in question occurred. The Commissioner's remarks in the colloquy with counsel at the time of the offer of McCann's testimony make it very clear that he relied on the absence of an objection based *specifically* on non-compliance with section 112 in admitting the testimony.

■ In *Gordon*, such an objection was made at the time of the offer of the challenged testimony. *Id.* at 626–27. However, because of the peculiar nature of the exclusionary prohibition of the statute that procedural circumstance does not properly serve to distinguish this case from *Gordon*. Evidence based on any statement obtained from the employee without complying with

COMMISSIONER: If the only grounds for objection is hearsay, the objection is overruled.

Q What was Mr. Coleman doing on the premises?

the safeguards of section 112, in the specific words of the statute, shall not "be admissible in evidence or considered in any way in any proceedings under this Title...." That prohibition is specific and all-inclusive. It represents a statutory rule of substantive law enacted on the basis of a policy judgment peculiarly within the legislative prerogative. It is an absolute prohibition upon two specific uses of such evidence: 1) admissibility in proceedings before the Commission and 2) consideration in any way in any such proceedings. As such, the prohibition is more than a mere rule of evidence. No objection is required to exclude the evidence; it is prohibited from use *even in the absence of objection* by the employee, as is the case with parol evidence. *See, e.g., Interstate Industrial Uniform Rental Service, Inc. v. F. R. Lepage Bakery, Inc.,* Me., 413 A.2d 516, 519 (1980); *Sargent v. Coolidge,* Me., 399 A.2d 1333, 1345 (1979). It was the policy judgment of the Legislature that, as a matter of substantive prophylaxis, proceedings under the Workers' Compensation Act should be fully insulated in all circumstances from the effect of any such evidence when obtained without compliance with the statutory safeguards. To accomplish that end, it enacted what could only have been contemplated to be a substantive rule of law excluding the evidence from admission in compensation proceedings and prohibiting its consideration "in any way." We so hold.

■ However, as we pointed out in *Gordon*, 425 A.2d at 628, *admission into evidence* of testimony based on a statement of the employee proscribed by section 112 may be "harmless error" if the record makes it clear that, in spite of its admission, the Commissioner did not consider it in any way in reaching any decision in the proceedings before him. In *Gordon*, the Commissioner specifically stated in his decree that he did not consider the offending testimony. Ad-

COMMISSIONER: Read someday *Gordon v.s. Colonial Distributors.*

ditionally, the state of the record there reflected the existence of other weighty evidence in the case which, by itself, would justify, under applicable rules of law, the conclusions reached by the Commissioner.

Such is not the case here, however, for we can only speculate as to whether the Commissioner considered McCann's testimony once it had been erroneously admitted in evidence at the hearing. Worse still, the better founded speculation would seem to be that the Commissioner here did consider it in determining that the employee had failed to carry his burden of proving that the injury "arose out of and in the course of his employment." If he thought that the absence of specific objection resolved any question as to admissibility of the evidence, it is only rational to suppose that he thought it removed any objection to his consideration of the evidence. It is impossible to construct any sensible analysis by which the Commissioner could have concluded that even though admissible, he could not consider the testimony as evidence in the case. Thus, he must have concluded that the absence of specific objection made the evidence usable as well as admissible. Further, he never disclaimed consideration of the evidence as did the Commissioner in *Gordon.* Finally, his reference to the *Gordon* case, on admission of the testimony, can only have significance in one of two ways; either it displays the Commissioner's belief that the present case was distinguished from *Gordon* because of the lack of a specific objection based on section 112 or it was an idle flaunting of the superiority of the Commissioner's knowledge of the law over that of the employee's counsel. We are satisfied that the first alternative represents correctly the actual fact. We cannot give credence to the latter alternative.

It is to be further observed that the time of occurrence of the incident was the critical factual issue to be resolved by the Commissioner in determining the existence or non-existence of work-connection between the employment and the incident. The inadmissible testimony was directly and cogently relevant to that question, if believed by the Commissioner. Yet, it must be noted that it was the *only* evidence that militated against the conclusion that the incident occurred at approximately 5:30 p. m. rather than an hour and a half later. It must be viewed as unlikely that the Commissioner, acting on established principles of law, in the absence of that testimony, would have concluded that the incident did not occur "in the course of" the employment. *See Cook v. Bangor Hydro-Electric Co.,* Me., 402 A.2d 64 (1979) ("off-duty status not dispositive"; test is whether the act was undertaken "in good faith to advance the employer's interest"); 1A A. Larson, *Workmen's Compensation Law* § 27 (1979) and cases there cited.[4] It is the "in the course of" element of the statutory test of work-connection that is most directly concerned with the temporal relationship of the injury to the employment. *Wing v. Cornwall Industries,* Me., 418 A.2d 177, 179 (1980); *Blackman v. Harris Baking Co.,* Me., 407 A.2d 21, 23 (1979). We find rationally irresistible on the record in this case the conclusion that the Commissioner, believing that the procedural default made the rule of the *Gordon* case inapplicable to the employer's inadmissible testimony, improperly gave weight to it which resulted in a conclusion on his part that the employee had failed to show that the incident occurred "in the course of" his employment.

It is also to be noted that it is especially critical that we be assured on the issue of work-connection that the Commissioner has considered only properly admissible and competent evidence. This is so because the range of our deference to "the Commissioner's judgmental application of the legal criterion," *Wing,* 418 A.2d at 181, applicable to this issue is unusually broad. *See Timberlake v. Frigon & Frigon,* Me., 438 A.2d 1294, 1296 (1982). As we recently have been at

---

4. On remand, the Commissioner deciding the issue anew on a proper record will have open to him any path of factual analysis from which the original Commissioner may have been diverted by his impermissible reliance on the inadmissible testimony.

pains to point out explicitly in *Wing*, 418 A.2d at 181, where that "judgmental call" is based on competent evidence we are especially loath to displace it on appellate review. For that deference to be well-founded, however, there must be no rational likelihood that the Commissioner's judgmental application of the legal standard is tainted by the consideration of any evidence that is not properly before him or which is not otherwise competent to serve legitimate purposes of proof. Because we are thoroughly satisfied that the inadmissible testimony of the employer did taint the application of the law to the totality of the evidence properly before the Commissioner in this case, the entry must be:

Judgment vacated.

Remanded to the Superior Court for further remand to the Workers' Compensation Commission for further proceedings consistent herewith to be held by a Commissioner other than the one who sat below.

Further ordered that the employer pay to the employee $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.